Charles H. TROWBRIDGE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 559, 1992.

Supreme Court of Delaware.

Submitted: June 7, 1994.
Decided: Aug. 19, 1994.
Rehearing Denied Sept. 21, 1994.

Paul S. Swierzbinski, Office of Public Defender, Dover, for appellant.

Gary A. Myers, Dept. of Justice, Georgetown, for appellee.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

VEASEY, Chief Justice.

In this appeal, we consider whether the Superior Court abused its discretion by admitting evidence relating to a 1979 juvenile adjudication of defendant below-appellant Charles H. Trowbridge, III ("Trowbridge") at his trial for a murder that took place in 1991. We hold that the admission of such evidence is reversible error because the juvenile adjudication was too remote in time to be relevant to the charges for which Trowbridge is currently being prosecuted. Therefore, we **REVERSE** his convictions in the Superior Court and **REMAND** the case for a new trial consistent with this opinion.

## I. FACTS

During the early morning hours of June 30, 1991, Trowbridge was drinking heavily in the vicinity of the Heartbreak Hotel in Bowers Beach. Trowbridge grew up in a house located next to the Heartbreak Hotel, but has not lived in that house since it was sold to Harry Warner in 1974 (the "Warner House"). The residents of the Warner House in June 1991 were Margaret Wyman, who operated the Heartbreak Hotel, and her son, Chad Wyman ("Chad"). Trowbridge lived three blocks away from the Heartbreak Hotel.

At approximately 12:45 a.m. on June 30, 1991, Trowbridge had a drink at the Heartbreak Hotel, and thereafter lingered around a chain-link fence outside of the hotel. According to Trowbridge, he then went to the Warner House and entered it in the mistaken belief that he still lived there. Harry Warner testified at trial that Trowbridge had

tried to enter the Warner House several years earlier while he was in a drunken condition. Trowbridge's fingerprints were found on the door knob of the Warner House. Trowbridge claims that, while he was in the house, he fell in the dark, picked up a wet knife that was on the floor, saw a body on the floor, and ran out the back door. The knife, which had one of Trowbridge's fingerprints on it, was found in the motor vehicle of William Jackson, Trowbridge's uncle.

Margaret Wyman returned to the Warner House shortly after 2:00 a.m. and saw her son apparently sleeping on the floor. Although certain items in the house seemed out of place, the house was not in disarray and there were no signs of a forcible entry or a struggle. Margaret Wyman left Chad on the floor and went to bed. At approximately 4:00 a.m., she woke up and saw Chad still on the floor. When she removed an afghan that was covering Chad, she discovered that he was dead. At Chad's autopsy, the medical examiner found that Chad had multiple stab wounds, as well as a number of scrapes and bruises.

During Trowbridge's trial in the Superior Court, his counsel argued in his opening statement that the State could not establish that Trowbridge had a motive for committing the murder. Following Trowbridge's direct testimony, the State requested permission to present evidence of a bad act committed by Trowbridge while he was a juvenile. Specifically, the evidence related to a fire set by Trowbridge to the Bowers Beach Fire Company in 1979. When Trowbridge was questioned in 1979 about why he started the fire, he responded by saying "I don't know." The State argued that the evidence was relevant to show that Trowbridge had previously acted without a motive. The trial court granted the State's request to admit this evidence under Delaware Rule of Evidence ("D.R.E.") 404.

The jury found Trowbridge guilty of murder in the first degree, burglary in the first degree, and possession of a deadly weapon during the commission of a felony. The trial court sentenced Trowbridge to life imprisonment without the possibility of parole for the murder conviction. Trowbridge challenges his convictions on three grounds: (1) The trial court abused its discretion by admitting evidence of Trowbridge's 1979 juvenile delinquency adjudication under D.R.E. 404(b); (2) the trial court abused its discretion by not granting a new trial based on the State's alleged withholding of *Brady* material; and (3) the trial court improperly overruled Trowbridge's objection to a comment by the prosecutor regarding Trowbridge's ability to call witnesses. We hold that the admission of the 1979 juvenile adjudication was an error which requires the reversal of Trowbridge's convictions. In light of this holding and because the other two issues raised by Trowbridge will likely be moot on remand, we need not address those issues in this appeal.

## II. THE ADMISSION OF TROWBRIDGE'S 1979 JUVENILE ADJUDICATION.

The trial court admitted Trowbridge's 1979 juvenile adjudication under D.R.E. 404(b) after an analysis of the standards established by this Court in *Getz v. State,* Del.Supr., 538 A.2d 726 (1988). In *Getz,* this Court held that the admissibility of evidence of prior bad acts under D.R.E. 404(b) should be determined based on the following guidelines: (1) The evidence must be material to an issue or ultimate fact in dispute; (2) the evidence must be introduced for a purpose sanctioned by D.R.E. 404(b) or another purpose not inconsistent with the basic prohibition against such evidence; (3) the evidence proving the prior crime must be plain, clear, and conclusive; (4) the prior crime(s) must not be too remote in time; (5) the probative value of the evidence must be balanced against its unfairly prejudicial effect; and (6) the jury must be instructed regarding the limited purpose for the introduction of the evidence. *Id.* at 734. The trial judge found that the 1979 juvenile conviction, and particularly Trowbridge's statement that he did not know why he started the fire, was material to the issue of Trowbridge's motive, or lack thereof, for killing Chad. In addition, the trial judge concluded that the evidence was not too remote in time

and that its probative value outweighed its prejudicial effect.

Trowbridge's 1979 juvenile adjudication occurred 12 years prior to the crimes with which he is presently charged. The substantial time interval between the two events raises a fundamental concern as to the relevance of the earlier incident. In discussing the remoteness guideline of *Getz*, this Court recently explained that:

> "The degree of similarity between the two incidents necessary to prove [a permissible purpose under D.R.E. 404(b)] is thus inversely proportional to the time span between the two crimes." *Commonwealth v. Shively,* Pa.Supr. [492 Pa. 411], 424 A.2d 1257, 1259 (1981). "[A] lengthy time lapse can render the evidence legally irrelevant. Temporal remoteness depreciates or reduces the probative value of the evidence." [Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 9:70, at 8–16 (1992)].

*Allen v. State,* Del.Supr., 644 A.2d 982, 988 (1994).

We hold that the Superior Court abused its discretion by ruling that Trowbridge's 1979 juvenile adjudication was not too remote in time. As we observed in *Allen:*

> An act committed 12 years earlier is not as relevant as one committed more recently, and may not be relevant at all. While there is no bright line for determining whether an act is too remote, courts tend to analogize to the 10 year time limit contained in Rule 609(b) governing impeachment by evidence of conviction of a crime.

*Allen,* 644 A.2d at 988. *See also Loper v. State,* Del.Supr., No. 580, 1992, order at 17, Moore, J., 1994 WL 10820 (Jan. 3, 1994) (ORDER) (holding that D.R.E. 609(b) was violated where over 10 years had passed since the prior convictions occurred and the State had failed to ask the trial court to determine whether their probative value of the convictions outweighed their prejudicial effect and had failed to give sufficient written notice of the State's intent to use the evidence).

The passage of 12 years has completely eliminated the relevance of Trowbridge's 1979 juvenile adjudication, and the statement he made in connection therewith, to the offenses with which he is currently charged. Accordingly, the Superior Court's failure to consider the effect of the substantial time lapse on the relevance of Trowbridge's 1979 juvenile adjudication constitutes reversible error.

We therefore **REVERSE** Trowbridge's convictions and **REMAND** the case for a new trial consistent with this opinion.