Frederick W. SMITH, Jr., Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 34, 1994.

Supreme Court of Delaware.

Submitted: March 16, 1995.
Decided: June 14, 1995.
On Rehearing *en Banc*: Oct. 5, 1995.

Edward C. Pankowski, Jr., Asst. Public Defender, Office of Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court *en Banc.*

BERGER, Justice:

In this appeal we consider several claims of error raised by defendant below-appellant, Frederick W. Smith ("Smith"), who was convicted by a Superior Court jury of second degree unlawful sexual intercourse, third degree unlawful sexual penetration, and third degree assault. Smith contends that the Superior Court erred in: (i) admitting medical records that had been redacted by the prosecutor; (ii) refusing to admit a portion of Smith's statement to the police; (iii) admitting prior "bad acts" evidence; (iv) admitting the victim's tape recorded statement pursuant to 11 *Del.C.* § 3507; and (v) denying Smith's Motion for Judgment of Acquittal at the conclusion of the State's case. For the reasons stated below, we hold that the Superior Court committed no error in its rulings on the first three evidentiary claims or in its denial of the Motion for Judgment of Acquittal. Although it may have been error to allow, over objection, the victim's statement into evidence at a point in the trial when the victim was no longer available to testify, there was no objection on that ground, and we conclude that the admission of the victim's § 3507 statement did not constitute plain error. Thus, we affirm the judgment of the Superior Court.

## I. FACTS

In the summer of 1993, Smith and Carla Anderson ("Anderson") had been dating for approximately one year, were living together, and were engaged to be married. Their relationship, however, was marked by violence. Between October 1992 and April 1993, Anderson called the police five times after being assaulted by Smith during the course of what Anderson called domestic disputes. On two of those occasions, Anderson's injuries required medical attention. In July 1993, another such "domestic dispute" led to the criminal charges against Smith that form the basis for this appeal.

On the evening of July 21, 1993, Anderson arrived home late from work and Smith accused her of cheating on him. Anderson denied it and, in the course of arguing, Smith began smacking and punching Anderson. They were in their bedroom at this point and Smith had locked the door and unplugged the telephone. He then told Anderson to lie down on the bed and take off her clothes, which she did. As the argument continued, Smith put his hands in Anderson's vagina and told her that she smelled like condoms. He then forced Anderson to engage in sexual intercourse against her will.

The physical and verbal assault went on through the night. Smith continued to slap Anderson and pull her hair. She tried to run out the front door at one point, but Smith grabbed her and pulled her back into the bedroom. After forcing Anderson to have intercourse for a second time, Smith fell asleep and Anderson called 911. By this time, it was approximately 7:15 a.m.

Two New Castle County Police officers, Bonnie Turner ("Turner") and Joe Fitzgerald responded to the 911 call. When they arrived at the apartment, Anderson was crying and Turner observed several bruises on her legs and forehead. Anderson briefly explained to Turner what had happened the night before. The two officers then went to the back bedroom, where Smith was still sleeping, woke him up and arrested him.

Anderson was taken to Christiana Hospital, where she was examined by Dr. Leo Burns ("Burns"). During the course of the examination, Anderson repeated to Burns that she had gotten into an argument with Smith, and that he beat and raped her. After the medical examination, Anderson was taken to the police station, where she gave an eight-page, detailed statement about the events of the previous evening to Detective W. Scott McLaren ("McLaren"). Again, Anderson repeated that she and Smith were arguing; that he hit her with his fists and that he forced her to have sexual intercourse against her will.

By the time Smith was tried, in November 1993, he and Anderson apparently had reconciled. Anderson did not appear on the first day of trial, and the trial judge issued a *capias* to secure her attendance. The police were unable to locate Anderson by the next morning and the State proceeded without her. At the end of that day, the State had presented all of its other evidence and it rested. Anderson was brought into court by the police on the third day of trial and the Court allowed the State to reopen its case. On the witness stand, Anderson reluctantly acknowledged that she and Smith had fought on the night in question and that they had traded punches. However, she denied having been raped. Anderson explained that, when she spoke to the police on July 22, 1993, she was angry, tired and upset. Anderson testified that she exaggerated a lot about what had happened because she wanted the police to remove Smith from the apartment.

During the course of her examination, Anderson made it clear that she did not wish to testify. At one point, she tried to stop the examination, stating that she was sick of it and had the right to remain silent. The trial judge explained that she was not charged with any crimes and had no right to remain silent. He instructed Anderson to answer the questions and told her that as soon as she was finished, she would be allowed to leave. The State concluded its examination of Anderson without offering her taped statement to McLaren into evidence. After cross-examination and redirect, Anderson was excused. The State then called another witness, who testified briefly and was excused. Then the State offered Anderson's taped

statement into evidence. Smith's counsel objected on the ground that the State could have offered the tape into evidence before it rested.[1] The objection was overruled; the tape was admitted and played; and a written transcript was provided to the jury.

Smith presented no witnesses. The jury deliberated for just over an hour and returned with a guilty verdict. On January 7, 1994, Smith was sentenced to 32 years in prison.

## II. REDACTED MEDICAL RECORDS

Smith's first claim of error relates to the medical records of Anderson's examination at Christiana Hospital on the morning of the assaults. Those records included notations that Anderson had had three pregnancies and had been treated for an infectious vaginal disease. The State planned to introduce the medical records in evidence, but moved to redact the two notations as irrelevant and potentially prejudicial. Smith opposed the redaction of references to Anderson's prior pregnancies and objected to the fact that the State had redacted the medical records before the trial court ruled on its motion. On appeal, Smith argues that the trial judge erred in allowing the prior pregnancies to be redacted and that the error was caused by prosecutorial misconduct. We find this claim to be without merit, whether analyzed as an evidentiary matter or as a claim of misconduct.

■ From an evidentiary perspective, it is clear that there was no abuse of discretion. See *Trowbridge v. State,* Del.Supr., 647 A.2d 1076, 1078 (1994). The trial judge questioned whether the examining physician would need to know about Anderson's prior pregnancies in order to properly evaluate her physical condition on July 22, 1993. The prosecutor was unable to answer the judge's question, and was given permission to consult with the doctor on that point. The prosecutor then advised the trial judge that, according to the doctor, Anderson's prior pregnancies would have no bearing upon the medical examination. In light of that response,

which was not disputed at trial or on appeal, the motion to redact the medical records was granted. That ruling was well within the sound discretion of the trial judge.

■ Smith's argument with respect to prosecutorial misconduct is totally unfounded. He contends that, by redacting the medical records, the State failed in its responsibility to preserve evidence. According to Smith, this alleged misconduct somehow prevented the trial judge from ruling that the redacted material should have been presented to the jury. The short answer to this argument is that there was no destruction of evidence, no misconduct, and no interference with the trial judge's ability to rule. The State merely made redacted *copies* of the medical records. There is nothing to suggest that the original medical records were tampered with in any way. Thus, the State engaged in no improper conduct and the trial judge was under no compulsion to rule in favor of the State.

## III. SMITH'S STATEMENT TO THE POLICE

■ According to a police report written by Officer Turner, when Smith was arrested, he claimed that Anderson had "pulled a knife on him." Appellant's Appendix, A–21. Smith tried to introduce that statement at trial, but the trial judge ruled that it was inadmissible hearsay, not within any exception. On appeal, Smith contends that the statement should have been allowed into evidence as an admission by a party-opponent. This argument fails because an admission is a statement offered *against* the party. D.R.E. 801(d)(2). Here, Smith's self-serving statement was offered in Smith's defense, to show that he was not the aggressor.

■ Alternatively, Smith suggests that his statement to the police should have been treated the same as Anderson's statements to the police, which were admitted under the excited utterance exception to the hearsay rule. D.R.E. 803(2). An excited utterance is defined as, "[a] statement relating to a star-

---

1. There was no objection on the ground that Anderson was not available to be cross-examined.

tling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Ibid.* The trial judge ruled that Anderson, who was crying and upset at the time she spoke to the police officers, was still "under the stress of excitement" caused by hours of argument and physical violence. Smith, by contrast, was fast asleep when the police arrived and had to be awoken in order to be taken into custody. From these facts it is clear that Smith's statement does not qualify as an excited utterance and was properly excluded by the trial judge.

## IV. D.R.E. 404(b) EVIDENCE

When the State moved to reopen its case, it also sought a ruling on the admissibility of evidence relating to prior violent episodes between Smith and Anderson. The State argued that the repeated acts of violence established a course of conduct that helped prove Anderson's lack of consent to sexual intercourse. In addition, the fact that Anderson was enduring an abusive relationship helped explain why, as the State correctly anticipated, she would recant her prior statements and testify that the sexual relations were consensual. The trial judge agreed and allowed the State to ask Anderson about five other incidents where Smith's conduct resulted in Anderson calling the police, going to a hospital emergency room for treatment, or both. Smith argues that this evidence should have been excluded because it was unfairly prejudicial and was not supported by clear and conclusive evidence.

■ Pursuant to D.R.E. 404(b), evidence of prior wrongs or acts, although inadmissible to prove a person's character, may be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." This list offers examples of purposes for which evidence of prior wrongs could be admitted; it is not exclusive. *Pope v. State*, Del.Supr., 632 A.2d 73, 76 (1993). In *Getz v. State*, Del.Supr., 538 A.2d 726, 734 (1988), this Court ruled that, as a precondition to admission of Rule 404(b) evidence, the trial court must find that: (i) the evidence is "material to an issue or ultimate fact in dispute in the case;" (ii) it is being introduced for a purpose permitted by the Rule; (iii) the prior bad acts are subject to proof by clear and conclusive evidence; (iv) the prior acts are not "too remote in time from the charged offense;" and (v) the probative value of the prior acts evidence outweighs its prejudicial effect. If the trial court is satisfied that the evidence meets these standards, it may be admitted, but the evidence should be the subject of a jury instruction explaining the limited purpose for which it was introduced.

■ After evaluating each of the *Getz* factors, we find no abuse of discretion by the trial judge. Smith tacitly concedes that the evidence was material, introduced for a proper purpose, and concerned events that were not too remote in time. He argues only that the prior violent episodes were not established by satisfactory evidence and were unfairly prejudicial. With respect to the quality of the evidence, there is no question but that the clear and conclusive standard was satisfied. Anderson reluctantly admitted that she and Smith had fought on the five prior occasions she was questioned about. In addition, the State offered police and medical records corroborating her testimony.

■ Smith's claim of unfair prejudice, likewise, is without merit. The evidence of repeated violent outbursts by Smith was highly probative on the question of whether, during another of the couple's domestic disputes, Anderson consented to sexual intercourse. Although that evidence may well have had a prejudicial effect, the trial judge minimized the risk of prejudice by limiting the amount of evidence the State could introduce for each prior incident and instructing the jury on the purposes for which the evidence of past abuse could be considered. In sum, we find that the trial court properly applied the *Getz* standards.

## V. MOTION FOR JUDGMENT OF ACQUITTAL

At the conclusion of the State's case, Smith moved for acquittal as to those counts of the indictment charging him with unlawful sexual

intercourse and unlawful sexual penetration. He argued that, since Anderson denied having been subjected to any unlawful sexual contact, the charges should be dropped. The trial judge denied that motion, holding that the jury "should be able to assess the credibility of [Anderson's] testimony vis a vis the out-of-court statement and make a determination as to which they believe." Appellant's Appendix, B–15. On appeal, Smith takes a slightly different tack and argues that Anderson gave so many contradictory versions of the facts that all of her testimony had to be rejected as being incapable of belief.

The jury is the sole trier of fact and is wholly responsible for determining the credibility of witnesses. *Robertson v. State,* Del.Supr., 630 A.2d 1084, 1095 (1993). Accordingly, the jury's verdict will not be overturned if, viewing the evidence in the light most favorable to the State, any rational factfinder could have found the essential elements of the crime charged beyond a reasonable doubt. *Morrisey v. State,* Del.Supr., 620 A.2d 207, 213 (1993); *Robertson v. State,* Del.Supr., 596 A.2d 1345, 1355 (1991). Anderson testified at trial that no sexual assault took place. However, the jury chose not to believe her in-court testimony and opted instead to rely on the 911 tape, the statements Anderson made to the police and the statements she made to the doctor. We find that the jury's evaluation of the evidence was entirely reasonable and conclude that the trial judge committed no error in denying Smith's motion for acquittal.

## VI. ANDERSON'S § 3507 STATEMENT

The final issue on appeal, and the only one that is meritorious, concerns the admission of Anderson's out-of-court, taped statement to Detective McLaren. Smith argues that the trial judge erred in admitting the statement pursuant to 11 *Del.C.* § 3507 because, at the time the statement was introduced, Anderson had been excused from the witness stand and was no longer subject to cross-examination. Smith raises this objection for the first time

on appeal. Therefore, we review for plain error. Supr.Ct.R. 8; *Weedon v. State,* Del. Supr., 647 A.2d 1078, 1083 (1994).

Eleven *Del.C.* § 3507[2], enacted in 1970, provides:

(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

(b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.

(c) This section shall not be construed to affect the rules concerning the admission of statements of defendants or of those who are codefendants in the same trial. This section shall also not apply to the statements of those whom to cross-examine would be to subject to possible self-incrimination.

This Court first interpreted the statute five years after it was enacted. In *Keys v. State,* Del.Supr., 337 A.2d 18 (1975), the State used the statute to place in evidence two statements by a man who apparently was one of defendant's accomplices and who had been granted immunity. The statements were introduced through the testimony of a detective and a deputy attorney general and, although the declarant was available to testify, the State did not call him as a witness. The *Keys* Court reversed, holding that, pursuant to § 3507, the declarant must be called as a witness by the party introducing the statement and the direct examination of the declarant "should touch both on the events perceived and the out-of-court statement itself." *Id.* at 23. The Court specifically rejected the argument that the declarant's presence in the courtroom made him "subject to cross-examination" since defense counsel could have called the declarant as a witness.

**2.** At the time of enactment, the statute was designated 11 *Del.C.* § 3509. It was renumbered in the 1974 revision of Delaware Code Annotated.

Such an interpretation would unfairly shift the burden to the defendant, who would appear to the jury to be "sponsoring" the witness. *Id.* at 24.

Just three weeks after the *Keys* decision, the Court addressed another foundational requirement for the admission of a statement pursuant to § 3507—voluntariness. *Hatcher v. State,* Del.Supr., 337 A.2d 30 (1975). The offering party must establish that the out-of-court statement was voluntary, either during the direct examination of the witness or, if the witness denies that the statement was voluntary, on *voir dire.* The trial judge "must be satisfied that the offering party has shown by a preponderance of the evidence that the statement was voluntarily made, and must render an explicit determination on the issue before admitting it for the jury's consideration." *Id.* at 32 (citations omitted).

This Court next examined § 3507 to determine the extent of cross-examination necessary under the statute. *Johnson v. State,* Del.Supr., 338 A.2d 124 (1975). In *Johnson,* the complaining witness was a 75–year–old woman who had been raped. She gave four separate oral statements to the police within 48 hours of the attack. At trial, the victim testified on direct examination that she fainted after the attack and remembered nothing. Defendant argued that, since the victim had limited recall, she was not effectively subject to cross-examination as required by § 3507. The Court concluded otherwise:

> While the Statute does require that the out-of-court declarant be subject to cross examination, it does not expressly require any specific quality of cross examination or key the admission of the out-of-court statement to any particular recall in court on the part of the witness. To the contrary, the draftsmen of the Statute expressly contemplated that the in-court testimony might be inconsistent with the prior out-of-court statement. One of the problems to which the Statute is obviously directed is the turncoat witness who cannot recall events on the witness stand after having previously described them out-of-court. We conclude that there is nothing in the Statute or its intent which prohibits the admission of the statements on the basis of limited courtroom recall. *Id.* at 127.

Since 1975, this Court consistently has reaffirmed the *Keys, Hatcher* and *Johnson* interpretations of § 3507. *See Jackson v. State,* Del.Supr., 643 A.2d 1360 (1994); *Feleke v. State,* Del.Supr., 620 A.2d 222 (1993); *Ray v. State,* Del.Supr., 587 A.2d 439 (1991); *Gray v. State,* Del.Supr., 441 A.2d 209 (1982).

In this case, we consider the "subject to cross-examination" requirement of § 3507 from a timing perspective. Anderson was called as a witness by the State and her direct examination touched on both the events of July 21, 1993 and her statements to the police. In addition, although Anderson complained that it was the police, not she, who used the word "rape," Anderson did agree that the police did not make her say anything. Thus, at the conclusion of the State's direct examination of Anderson, the proper foundation had been laid for the introduction of Anderson's taped statement pursuant to § 3507. However, the State chose not to introduce the statement at that time. Instead, the State waited until Anderson had been excused and another witness had concluded her testimony before offering Anderson's statement into evidence.

Smith argues that the timing of the admission of Anderson's statement deprived him of an opportunity to effectively cross-examine her. We agree. In *Keys,* this Court recognized that "[t]he admission of out-of-court statements can have an impact on the practical ebb and flow of the criminal trial drama." *Keys v. State,* 337 A.2d at 23. In that case, since the State did not call the declarant as a witness, defendant was forced to call the declarant as his own witness if he wanted to examine the declarant about the statement. The Court found that burden to be unfair and inconsistent with the statute. Here, Smith faced a similar dilemma. Although Anderson was called as a witness and examined by the State, her statement was not offered into evidence when the State concluded its direct examination. As a result, Smith was left with two equally unsatisfactory alternatives. If he cross-examined Anderson about the statement before it had been offered as evidence, Smith would be

**8**

calling the jury's attention to a damning statement made by a witness who testified in his favor on direct examination. Alternatively, Smith could ignore the statement and hope that the State had decided not to put it into evidence. By choosing the latter course, Smith lost the opportunity to cross-examine Anderson about the statement. This is precisely the type of problem that the Court sought to avoid in *Keys.*

We hold that § 3507 requires not just the opportunity to cross-examine the declarant, but the opportunity to cross-examine the declarant about the out-of-court statement. As a result, the statement must be offered into evidence no later than at the conclusion of the direct examination of the declarant. We are not here restricting the offering party's ability to introduce a § 3507 statement into evidence through someone other than the declarant or at any time prior to the conclusion of the declarant's direct testimony. We recognize that, for tactical and other reasons, the offering party should be allowed as much flexibility as the statute permits. However, the introduction of a § 3507 statement cannot be timed so as to place any strategic burden on the non-offering party.[3] Accordingly, Anderson's taped statement should not have been introduced pursuant to § 3507.

The remaining question is whether that error mandates reversal. Smith did not raise this objection at trial. "Failure to make an objection at trial constitutes a waiver of the defendant's right to raise that issue on appeal, unless the error is plain." *Wainwright v. State,* Del.Supr., 504 A.2d 1096, 1100 (1986). "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." *Id.* After a careful review of the record, we are satisfied that the improper introduction of Anderson's taped statement did not deprive Smith of a fair trial.

The State had an extremely strong case against Smith even without the taped statement. Testimony about the past episodes of violence, Anderson's 911 call, her statements to Officer Turner and her statements to the examining physician all were properly admitted into evidence and clearly indicated that the intercourse was not consensual. Anderson's taped statement to McLaren was nothing more than a detailed reiteration of the other statements; it contained no new allegations and no new material facts. As a result, we conclude that the erroneous admission of the taped statement was not clearly prejudicial and did not affect the integrity of the trial.

Based upon the foregoing, we hereby affirm Smith's conviction.

## ON REHEARING *EN BANC*

Following issuance of the panel's decision, the State filed a motion seeking clarification as to the timing of the admission into evidence of statements pursuant to 11 *Del.C.* § 3507. The State cited what it termed an "apparent conflict" between the panel's holding in this case and an earlier panel decision in *Goodwin v. State,* Del.Supr., No. 111, 1991, 1992 WL 53432, Walsh, J. (February 27, 1992) (ORDER).[4] Although the motion filed by the State, a "Motion for Clarification," was not authorized by the Rules of this Court, the Court determined *sua sponte* to consider the § 3507 timing issue *en banc.*

We conclude that *Goodwin* is distinguishable. In that case, Goodwin was being tried for the third time on the same charges. The victim's out-of-court statement, which was substantially the same as her in-court testimony, had been introduced in both prior trials and Goodwin knew that it would be introduced again in the third trial. Goodwin cross-examined the victim extensively as to the substance of her out-of-court statement and, although the statement was not intro-

---

**3.** For example, the record indicates that Anderson was in the courtroom after her § 3507 statement had been introduced in evidence. Smith could have called her as a defense witness and cross-examined her about the statement after the State rested for the second time. Following

*Keys,* we find that the statute imposes no such burden on Smith.

**4.** It is most unfortunate that the State failed to cite the *Goodwin* case in its brief on appeal.

duced until after the victim concluded her testimony, Goodwin was given the opportunity to call the victim as a witness after the statement was introduced. The *Goodwin* Court held that the trial court did not abuse its discretion in admitting the § 3507 statement after the declarant finished testifying. However, the Court noted that, "the preferred practice is to introduce the out-of-court statement during the declarant's direct testimony...." *Goodwin v. State*, slip. op at 4.

To the extent that *Goodwin* cannot be distinguished, we hereby adopt the "preferred practice" articulated in *Goodwin* by requiring that a § 3507 statement be offered into evidence no later than at the conclusion of the direct examination of the declarant.