# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | Cr. ID No. 090813580 |
| | ) | |
| EFRAIN RIVERA, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted:  April 8, 2015
Date Decided:  July 9, 2015

## <u>MEMORANDUM OPINION</u>

Christopher S. Koyste, Esquire, Attorney for Defendant.

Martin B. O'Connor, Deputy Attorney General, Department of Justice, Attorney for the State of Delaware.

**Rocanelli, J.**

# I. PROCEDURAL HISTORY

On May 18, 2010, a Superior Court jury found Defendant Efrain Rivera guilty of one count of Rape in the First Degree; one count of Rape in the Second Degree; one count of Menacing; one count of Assault in the Third Degree; two counts of Terroristic Threatening; and one count of Endangering the Welfare of a Child. Andrew J. Witherell, Esquire ("Trial Counsel") represented Defendant at trial. On July 23, 2010, the Trial Court sentenced Defendant to eighteen (18) years at Level V, suspended after fifteen (15) years for three years at Level IV, suspended after six months for two years at Level III. On July 25, 2011, the Delaware Supreme Court affirmed Defendant's conviction.[1]

On October 22, 2012, Defendant filed a Motion for Appointment of Counsel to pursue postconviction relief. On December 11, 2012, the Court appointed Christopher S. Koyste, Esquire ("Rule 61 Counsel"). After motion practice regarding discovery,[2] Defendant filed the pending Motion for Postconviction Relief ("PCR Motion").

# II. FACTS PRESENTED AT TRIAL SUPPORTING CONVICTION

---

[1] *Rivera v. State*, 26 A.3d 214 (Del. 2011).
[2] *State v. Rivera*, 2014 WL 2538678 (Del. Super. June 4, 2014).

1

On August 14, 2009, Defendant was at the residence of Juan Pacheco. Cariely Rosado, Pacheco's niece, also lived at the residence with Rosado's infant child. Defendant left the residence when Pacheco was going to bed. Rosado was asleep in her bedroom on the first floor, which Rosado shared with her infant child. Later, Defendant returned to the residence and entered Rosado's bedroom. Defendant held a knife to Rosado's throat and sexually assaulted Rosado while Rosado's infant child was in the bed with Rosado.

Defendant left the residence and Rosado ran upstairs to alert Pacheco, who then called the police. Rosado, Pacheco, and Defendant were all interviewed by the police following the report. In addition, Rosado was examined by a nurse who testified as a witness at trial.

## III. DEFENSE STRATEGY AT TRIAL

Trial Counsel's defense was to deny any relationship between Defendant and Rosado. This strategy was consistent with Defendant's statements to the police when he was interviewed at the time of the criminal report.

## IV. DEFENDANT'S PCR MOTION THEORY OF AN AFFAIR-DEFENSE

The central gravamen of Defendant's PCR Motion claims that Defendant and Rosado were having a consensual affair and that Trial Counsel was ineffective for failing to present evidence consistent with this defense theory. However, as discussed in connection with each of the claims, presentation of such a defense was

inconsistent with the evidence to the contrary and there was no evidence to support an affair-defense other than Defendant's own testimony. The testimony of Rosado, the testimony of the nurse who examined Rosado after the assault, and other physical evidence supported a finding that the sexual intercourse was not consensual. Other than Defendant's own proffered testimony, there is no evidence to support the version of events offered by Defendant in his PCR Motion.

For example, Defendant now claims that on the night of the assault he and Rosado had a fight and that Rosado made up the rape when Pacheco heard the argument in order to hide their affair. However, Pacheco testified that he only woke up when Rosado went upstairs to tell him about the rape.[3] At no point did Pacheco testify that he heard an argument between Defendant and Rosado.

Moreover, Defendant has not presented any support for his recent claim that he even told Trial Counsel before the trial about the claimed affair.[4] As discussed below, even if Defendant had raised with Trial Counsel an affair-defense at the time of trial, it was professionally reasonable to reject an affair-defense as a trial strategy.

## V.    ASSERTED GROUNDS FOR POSTCONVICTION RELIEF

---

[3] Trial Tr. at 55, May 11, 2010.

[4] Trial Counsel's affidavit does not suggest that Defendant ever informed Trial Counsel of his alleged affair with Rosado. *See* Trial Counsel Aff., Oct. 20, 2014.

3

Defendant asserts six grounds for relief in his PCR Motion: (1) ineffective assistance of Trial Counsel in failing to appeal the Trial Court's ruling that Rosado's Section 3507 statement was admissible; (2) ineffective assistance of Trial Counsel for failing to properly advise Defendant of his right to testify; (3) ineffective assistance of Trial Counsel for failing to adequately cross examine Pacheco; (4) ineffective assistance of Trial Counsel for failing to investigate the contents of Defendant's cell phone; (5) multiple *Brady* violations including (a) that the State failed to disclose information in relation to Pacheco and a Wilmington Police Officer involved in the police interviews and (b) that the State failed to disclose information regarding any deal between Rosado and the State; and (6) cumulative due process error undermining Defendant's right to a fair trial.

## VI.    PROCEDURAL BARS TO POSTCONVICTION RELIEF

Before addressing the merits of a motion for postconviction relief, this Court must consider the procedural requirements of Rule 61(i).[5]  Rule 61(i)(1) requires a motion for postconviction relief be filed within one year after the judgment of conviction is final.  The Supreme Court affirmed Defendant's conviction and sentence on July 25, 2011.  Defendant did not seek appointment of counsel to pursue postconviction relief until October 22, 2012, after the one-year time limit under Rule 61(i)(1) had already lapsed.  Even assigning the filing date to

---

[5] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991).

Defendant's first inquiry, Defendant's PCR Motion does not satisfy the procedural time bar of Rule 61(i)(1) and, therefore, his claims are time-barred.

In order to avoid the procedural time bar of Rule 61(i)(1), Defendant must satisfy the requirements of Rule 61(i)(5), which was amended on June 4, 2014. Pursuant to the pre-amendment version of Rule 61(i)(5), procedural bars to relief "shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, or fairness of the proceedings leading to the judgment of conviction."[6] The June 4, 2014 amendments to Rule 61 eliminated this constitutionally based fundamental fairness exception.[7] Pursuant to the post-amendment version of Rule 61(i)(5), procedural bars "shall not apply either to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule."[8] Defendant's PCR Motion does not qualify for the Rule 61(i)(5) exception to the procedural bars under the pre-amendment[9] or post-amendment[10] version of

---

[6] Super. Ct. Crim. R. 61(i)(5) (pre-June 4, 2014 amendment).

[7] *See Gibbs v. State*, 2015 WL 3843378, at *2 n.23 (Del. June 18, 2015) (discussing Rule 61(d)(2)).

[8] Super. Ct. Crim. R. 61(i)(5).

[9] Defendant's PCR Motion does not satisfy the fundamental fairness exception, which is a narrow exception applied in limited circumstances. *Younger v. State*, 580 A.2d 552, 555 (Del. 1990).

[10] Defendant's PCR Motion does not claim that the court lacked jurisdiction nor does it "plead with particularity that new evidence exists that creates a strong inference that the movant is actually innocent[;]" or "plead with particularity a claim that a new rule of constitutional law,

Rule 61. Nevertheless, even if Defendant's PCR Motion was procedurally sound, Defendant's claims fail on the merits for the reasons that follow.

## VII. DEFENDANT'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises four claims of ineffective assistance of counsel.[11] Claims of ineffective assistance of counsel are governed by the two-prong *Strickland* test.[12] The movant must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness,[13] and (2) that counsel's errors prejudiced defendant.[14] In considering the first prong, there is a strong presumption that counsel's actions were professionally reasonable.[15] Additionally, judicial scrutiny should be highly deferential to counsel's decisions on trial strategy.[16] In considering the second prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[17] Failure to prove either prong renders the claim insufficient.[18]

---

made retroactive . . . [and] appli[cable] to the movant's case and renders the conviction . . . invalid." Super Ct. Crim. Rule 61(d)(2)(i), (ii).

[11] Defendant's claims of ineffective assistance of counsel are not subject to the procedural bar of Rule 61(i)(3) because ineffective claims are meant to be raised in the postconviction setting. *See Duross v. State*, 494 A.2d 1265, 1267 (Del. 1985).

[12] *Strickland v. Washington*, 466 U.S. 668 (1984).

[13] *Id.* at 688.

[14] *Id.* at 694.

[15] *Id.* at 688.

[16] *Id.* at 689.

[17] *Id.* at 694.

[18] *Id.* at 700.

## A. Failure to Appeal the Admission of Rosado's Section 3507 Statement

Defendant claims that Trial Counsel was ineffective for not appealing the admission of Rosado's statement to the police into evidence at trial. The admission of Rosado's statement is governed by Section 3507 of Title 11 which provides that "the voluntary out-of-court prior statement of a witness who is present and subject to cross examination may be used as affirmative evidence with substantive independent testimonial value."[19] Proper admission of a voluntary out-of-court statement under Section 3507 requires the declarant to testify as to the events and the truthfulness of the statement on direct examination.[20]

Defendant argues that Rosado's statement was improperly admitted because Rosado never testified as to its truthfulness. Further, despite objecting at the time, Defendant argues that Trial Counsel was ineffective for not appealing the improper admission. Defendant's claim does not satisfy the first prong of *Strickland* because Defendant cannot overcome the strong presumption that Trial Counsel's actions were professionally reasonable. Contrary to the claim in Defendant's PCR Motion, Trial Counsel made an effort to exploit Rosado's statement during cross-examination as a method of challenging Rosado's credibility and to address

---

[19] 11 *Del. C.* § 3507(a).
[20] *See Wyche v. State*, 113 A.3d 162, 165 (Del. 2015) (discussing the voluntariness of § 3507 statements); *Ray v. State*, 587 A.2d 439, 443 (Del. 1991) (requiring the declarant of the § 3507 statement testify as to the truthfulness of the statement).

7

inconsistencies between Rosado's statement and her testimony at trial.[21]

Additionally, during cross-examination Rosado stated, "I'm going to try and keep [to] the truth as much as possible and say everything I thought that happened that day."[22] Therefore, despite Trial Counsel's initial objection to the admission of Rosado's statement, Rosado *did* testify as to the truthfulness of events discussed in her statement.

Once Rosado testified about the events and the truthfulness of her statement, it was reasonable for Trial Counsel to conclude that the Section 3507 violation was one of form and not substance or that it was more technical in nature. The Delaware Supreme Court has held that such technical violations do not overcome the presumption of professional reasonableness.[23] Therefore, the Court finds that Trial Counsel's decision not to appeal the admission of Rosado's statement into evidence was reasonable under the prevailing professional norms.[24]

---

[21] Trial Tr. at 44–45, May 12, 2010.

[22] *Id*. at 30.

[23] *See Hoskins v. State*, 102 A.3d 724, 735 (Del. 2014) (stating that the awkward phrasing of the § 3507 foundation was "insufficient grounds…to overcome the presumption of trial counsel's reasonableness."); *Jackson v. State*, 643 A.2d 1360 (Del. 1994) (finding that the "technical non-compliance with the foundational requirements" was harmless).

[24] *See e.g.*, *Turner v. State*, 5 A.3d 612, 616–17 (Del. 2010) (providing that § 3507 statements "must be offered into evidence no later than at the conclusion of direct examination of the declarant" to avoid placing "any strategic burden on the non-offering party.") (quoting *Smith v. State*, 669 A.2d 1, 8 (Del. 1995)). In *Turner*, the State did not offer the declarant's Section 3507 statement into evidence until defense counsel began cross-examination without objection from defense counsel. The *Turner* Court concluded that, despite trial counsel's failure to object, the defendant could not establish a claim of ineffective assistance of counsel because defense counsel had asked only four questions on cross-examination before the State offered the statement into evidence and, therefore, defense counsel was not subject to strategic burden. *Id.*

8

Moreover, even assuming that Trial Counsel's performance did fall below a reasonable professional standard, Defendant is unable to demonstrate prejudice. Defendant argues that the admission of Rosado's statement was prejudicial because Rosado offered evidence of penetration, which Rosado did not state in her trial testimony. However, Defendant's argument ignores the testimony by other witnesses who presented evidence of penetration at trial. First, the nurse who examined Rosado after the assault testified at trial that Rosado told the nurse during the physical examination that there had been penetration during the rape.[25] Second, DNA evidence from a vaginal swab of Rosado provided evidence of penetration; specifically, that Defendant had ejaculated inside Rosado.[26] Thus, the record included evidence of penetration even without Rosado's statement during her police interview. Accordingly, the admission of Rosado's statement did not prejudice Defendant.

Defendant cannot satisfy either prong of *Strickland* and, therefore, his claim of ineffective assistance of counsel must be denied.

---

Here, however, the State admitted Rosado's statement into evidence in a timely manner despite the fact that Rosado testified as to the truthfulness of her statement on cross-examination. Even if Trial Counsel did appeal the admission of Rosado's statement, the error would not mandate reversal under the plain error standard of review. *See Smith*, 669 A.2d at 8 (concluding that under the plain error standard of review—an error so clearly prejudicial that it jeopardizes the defendant's right to a fair trial—the improper introduction of a § 3507 did not deprive the defendant of a fair trial). Therefore, because Rosado did testify as to truthfulness, albeit on cross-examination, the Court is satisfied that Trial Counsel's decision not to appeal the admission of Rosado's statement was reasonable.

[25] Trial Tr. at 14, May 13, 2010.

[26] Trial Tr. at 83–86, May 12, 2010.

**B. Failure to Seek Suppression of Defendant's Statement to Police Which Defendant Claims Undermined His Right to Decide Whether to Testify**

Defendant argues that Trial Counsel was ineffective because Trial Counsel did not move to suppress Defendant's statement to the police. Defendant contends that Trial Counsel should have moved to suppress Defendant's statement because it was involuntary in violation of the Fourteenth Amendment.[27] Furthermore, Defendant argues that suppression of his prior incriminating statement would have allowed Defendant to decide to testify at trial without worrying that the State would use his statement against him on cross-examination. Specifically, Defendant claims that he would have testified that he and Rosado were having a consensual affair and that Rosado fabricated the rape in order to prevent Pacheco from discovering the affair.

Defendant cannot satisfy the second prong of *Strickland*.[28] Even if Defendant had testified about an affair, it is likely that such testimony would have hurt Defendant, not helped him, because his testimony about an affair was inconsistent with the weight of the evidence to the contrary. Moreover, had

---

[27] *See Spano v. New York*, 360 U.S. 315 (1959); *Colorado v. Connelly*, 479 U.S. 157 (1986).

[28] *See Hoskins*, 102 A.3d at 730 ("'In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.'") (quoting *Strickland*, 466 U.S. at 697).

10

Defendant testified he would have been subjected to cross-examination, including his criminal history (albeit limited to arrests for driving under the influence) and the State would have exploited the inconsistencies between Defendant's testimony and the testimony, and prior consistent statements, of Pacheco and Rosado as well as the testimony of the nurse who examined Rosado, all of which would have contradicted Defendant's claimed affair-defense. It was therefore reasonable for Trial Counsel to have concerns about how the jury would have perceived Defendant's credibility.

Accordingly, Defendant cannot satisfy the prejudice prong of *Strickland* and, therefore, his claim of ineffective assistance of counsel must be denied.[29] Because the Court finds no prejudice, the Court will not address whether Trial Counsel's decision not to file a motion to suppress Defendant's statement to the police was objectively reasonable under the prevailing professional norms.

## C. Failure to Adequately Cross Examine Pacheco

Defendant argues that Trial Counsel was ineffective for failing to use statements Pacheco made during his police interview to impeach Pacheco on cross-examination. Pacheco's police interview was conducted in Spanish with an officer serving as an interpreter ("Interpreting Officer") for the English-speaking

---

[29] *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

11

detective. In Pacheco's voluntary statement to the police—not in response to a question—Pacheco offered that Defendant entered the residence through a window that Defendant first broke and then opened.[30] Pacheco made this statement in Spanish and it was not translated by the Interpreting Officer at the time of the interview or included in the police report prepared by the English-speaking officer. Defendant contends that the absence of any broken window at the residence supports the theory that Rosado let Defendant inside the residence as part of their affair and that Pacheco made up the story about the broken window to help Rosado cover up the affair.

However, there was no inconsistency to exploit on cross-examination because Pacheco—in response to police questioning—stated that he had locked all of the windows and doors before going to bed.[31] Defendant argues that Trial Counsel should have used Pacheco's statement about the broken window to impeach Pacheco because Pacheco was the only person to ever mention a broken window and no police officer testified regarding a broken window at the residence. Pacheco testified at trial that he saw a window open after he came downstairs.[32]

Pacheco's prior statement did not contradict Pacheco's testimony at trial. Although Pacheco did not say that the window was broken, and no other testimony

---

[30] Pacheco Tr. Police Interview at 5, Aug. 15, 2009.
[31] *Id.*
[32] Trial Tr. at 55, May 11, 2010.

was offered to that effect, Pacheco's testimony was reasonably consistent with his previous statement. Accordingly, Defendant's reliance on *Moore v. Secretary Pennsylvania Department of Corrections*[33] is misplaced. In *Moore*, the Third Circuit held "Counsel's failure to introduce evidence that contradicts a key witness's trial testimony is patently unreasonable."[34] Here, however, Pacheco's prior statement was not a contradiction.

Defendant's claim does not satisfy the first prong of *Strickland* because Defendant has not demonstrated that Trial Counsel's performance fell below an objective standard of reasonableness. Moreover, even assuming that Trial Counsel was ineffective in failing to translate Pacheco's statement into English, Defendant cannot demonstrate prejudice. Defendant is unable to demonstrate that, but for Trial Counsel's error the outcome of the proceedings would have been different. Defendant argues that Pacheco's statement contained exculpatory information because, if there was no broken window, it is likely that Rosado let Defendant into the residence in connection with the affair Defendant claims they were having. However, Pacheco did testify at trial that he saw a window open after he came downstairs. Therefore, it would not have changed the outcome of the trial even if Trial Counsel had cross-examined Pacheco on the statement he previously made

---

[33] 457 Fed.Appx. 170 (3d Cir. 2014).
[34] *Id.* at 182.

about a broken window, which was not included in the police report and was not a central focus of the State's case against Defendant.

Defendant cannot satisfy either prong of *Strickland* and, therefore, his claim of ineffective assistance of counsel must be denied.

## D. Failure to Investigate Contents of Defendant's Cell Phone

Defendant claims that Trial Counsel was ineffective for failing to investigate the contents of Defendant's cell phone, which the Wilmington Police Department seized following Defendant's arrest. Defendant argues that reviewing the phone would have provided evidence that Defendant and Rosado were having an affair, which would have helped to impeach Rosado's testimony at trial. Defendant cannot establish that Trial Counsel's performance fell below an objective standard of reasonableness. *Strickland* provides that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[35] *Strickland* further states that decisions not to investigate are assessed for "reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[36]

During Defendant's police interview, Defendant consistently denied having any sort of relationship with Rosado. This denial is inconsistent with Defendant's recently purported defense of an affair. As discussed above, Trial Counsel's

---

[35] *Strickland*, 466 U.S. at 691.
[36] *Id.*

14

decision not to focus on an affair-defense was a sound trial strategy and was professionally reasonable. Trial Counsel reasonably concluded that investigating the contents of Defendant's cell phone would have been fruitless to the defense strategy, which did not include any mention of an affair. Therefore, consistent with *Strickland*, Trial Counsel made a professionally reasonable strategic decision that investigation into the contents of Defendant's cell phone was unnecessary. Trial Counsel's decision, being reasonable under the circumstances, is entitled to deference by the Court.

Even if Defendant established that Trial Counsel's performance fell below an objective standard of reasonableness, Defendant is unable to establish prejudice as a result because Defendant would still need to overcome the inconsistencies between his purported defense of an affair and his statements made immediately following the incident that he had no relationship whatsoever with Rosado. Any evidence from Defendant's cell phone would also be inconsistent with the testimony of other witnesses, including Rosado and the nurse who examined her. Defendant cannot establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[37]

---

[37] *Id*. at 694.

15

Defendant cannot satisfy either prong of *Strickland* and, therefore, his claim of ineffective assistance of counsel must be denied.

## VIII. DEFENDANT'S CLAIMS OF *BRADY* VIOLATIONS

Defendant's PCR Motion argues that the State committed multiple *Brady* violations during the trial that warrant reversal of his conviction.[38] The United States Supreme Court held in *Brady v. Maryland*,[39] that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[40] In *U.S. v. Bagley*, the United States Supreme Court further held that the State has an affirmative duty to produce favorable evidence regardless of whether or not it is requested by the defense.[41] The *Bagley* Court held that favorable evidence must be disclosed where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[42] Additionally, the prosecutor has a duty to seek out "any favorable evidence known to the others acting on the government's behalf in the case, including the police."[43]

---

[38] The Court will examine Defendant's claims of *Brady* violations because *Brady* violations undermine the core principles of a fair proceeding. *See Jackson v. State*, 770 A.2d 506, 515–16 (Del. 2001).

[39] 373 U.S. 83 (1963).

[40] *Id.* at 87.

[41] *United States v. Bagley*, 473 U.S. 667, 682 (1985).

[42] *Id.*

[43] *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

The Court must conduct a three-prong analysis to determine if a *Brady* violation occurred: "(1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant."[44]

## A. Alleged Failure by State to Disclose Broken Window Statement by Pacheco to Wilmington Police

Defendant argues that information relating to Pacheco's statement concerning a broken window at the residence during his police interview, and the identity of a Wilmington Police Officer conducting the interview, were suppressed in violation of Defendant's rights under *Brady* and that he was prejudiced as a result.

During Pacheco's police interview, Pacheco made the unsolicited statement that Defendant broke a window to enter the residence, but the identity of the Interpreting Officer—who failed to translate Pacheco's broken window statement—is unknown.[45] Defendant contends that information regarding Pacheco's claim of a broken window, including the identity of the Interpreting Officer and the Interpreting Officer's notes or reports were *Brady* information because it was favorable in impeaching Pacheco's testimony at trial. Defendant further contends that this information was suppressed by the prosecution and that

---

[44] *Starling v. State*, 882 A.2d 747, 756 (Del. 2005) (internal citations omitted).
[45] Pacheco Tr. Police Interview at 5, Aug. 15, 2009.

18

Defendant was prejudiced because the information would have impeached Pacheco and supported Defendant's purported defense that Rosado let Defendant into the residence in connection with their ongoing affair.

Defendant has not established a *Brady* violation because the information is neither exculpatory nor impeaching. As discussed in relation to Defendant's ineffective assistance of counsel claims, Pacheco's testimony was reasonably consistent with Pacheco's statement to the police and with the testimony of the other witnesses. Pacheco testified at trial that a window was open when he came downstairs. There was no other report of a broken window and no other mention of a broken window aside from the unsolicited statement made by Pacheco during his police interview. A broken window was not a central part of the State's case against *Defendant* and was not inconsistent with the trial testimony of Pacheco. Presentation of Pacheco's prior statement would not have affected the outcome of the trial.

Even assuming that the unsolicited statement about a broken window was *Brady* information, Defendant cannot establish that the statement was suppressed by the State. Trial Counsel had access to Pacheco's police interview as a result of discovery. Therefore, Trial Counsel had an actual recording of the interview with the Wilmington Police Officer during which the statement about the broken window was made. The statement was made available to Defendant.

Accordingly, the Court finds that there was no *Brady* violation regarding Pacheco's broken window statement.

**B. Alleged Failure by State to Disclose "Deal" between Rosado and the State Regarding Rosado's Probation**

Defendant argues that the State committed a *Brady* violation in suppressing information concerning any express or implied "deal" between the State and Rosado that Trial Counsel could have used to impeach Rosado's testimony at trial. During the trial, Rosado was on probation for possession with intent to deliver a controlled substance. Rosado was discharged from probation some time after Defendant's trial after completing all the special conditions of her probation and for Rosado's overall compliance while on probation. Defendant contends that the special conditions of Rosado's probation are unknown; that one of these special conditions could have been her agreeing to testify against Defendant in exchange for less time on probation; and that an evidentiary hearing is needed to uncover evidence of any explicit or implied deal between the State and Rosado.

The Court finds no *Brady* violation. Defendant has not provided any evidence that there was any deal between the State and Rosado. Further, as the State notes, there is no evidence of an agreement in the record. Regardless of the State's concession that an evidentiary hearing would discern whether or not Rosado had an implied understanding that her probation would be shorter as a

20

result of her testimony, the Court finds Defendant has not provided sufficient evidence to support his claim of an agreement to testify that warrants a hearing.

Accordingly, the Court finds that there was no *Brady* violation regarding an alleged deal between the State and Rosado regarding Rosado's probation.

## C. Cumulative *Brady* Violation

Defendant argues that the cumulative impact of the multiple instances of suppressed information result in a *Brady* violation. However, Defendant's claims do not establish that the State suppressed *any* evidence, *Brady* or otherwise. Accordingly, because Defendant has not established that even a single *Brady* violation occurred, the Court finds that no cumulative *Brady* violation has occurred.

## IX. DEFENDANT'S CLAIM OF CUMULATIVE ERROR

Defendant argues that the cumulative impact of the ineffective assistance of counsel and *Brady* violations violated his due process rights and warrants reversal of his conviction. The applicable decisional law provides that the cumulative result of errors at trial may result in plain error requiring reversal even where the individual errors standing alone would not.[46] The Court finds that Defendant has not established any of his claims of ineffective assistance of counsel or *Brady*

---

[46] *Wright v. State*, 405 A.2d 685, 690 (Del. 1979).

violations. Because Defendant has not established any individual errors, there can be no cumulative error denying Defendant due process.

## X.    CONCLUSION

This Court finds Defendant's postconviction claims are time-barred and without merit. Defendant has not established that Trial Counsel was ineffective. Additionally, Defendant has not established that any *Brady* violation occurred.

**NOW, THEREFORE, this 9th day of July, 2015, Defendant Efrain Rivera's Motion for Postconviction Relief is hereby DENIED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____
**The Honorable Andrea L. Rocanelli**