**Justin L. BURRELL, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 528, 1999.

Supreme Court of Delaware.

Submitted: Oct. 17, 2000.

Decided: Nov. 29, 2000.

---

10. *Kofron v. Amoco Chemicals Corp.*, Del.   Supr., 441 A.2d 226, 231 (1982).

Joseph A. Hurley, Esquire, Wilmington, Delaware, for appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before VEASEY, Chief Justice, WALSH and HOLLAND, Justices.

HOLLAND, Justice:

The defendant-appellant, Justin L. Burrell ("Burrell"), was indicted on charges of Murder in the First Degree, Robbery in the First Degree, Burglary in the Second Degree, Conspiracy in the Second Degree and numerous counts of Possession of a Firearm During the Commission of a Felony.

Following a jury trial in the Superior Court, Burrell was found guilty of Manslaughter, Murder in the First Degree (felony murder), Robbery in the First Degree, Burglary in the Second Degree, Conspiracy in the Second Degree and four counts of Possession of a Firearm During the Commission of a Felony. The following sentences were ordered: Murder in the First Degree, life imprisonment without probation or parole or any other sentence reduction; Possession of a Firearm During the Commission of a Felony, five years at Level 5; Manslaughter, ten years at Level 5; Possession of a Firearm During the Commission of a Felony, five years at Level 5; Robbery in the First Degree, fifteen years at Level 5; Possession of a Firearm During the Commission of a Felony, five years at Level 5; Burglary in the Second Degree, five years at Level 5; Possession of a Firearm During the Commission of a Felony, five years at Level 5; and Conspiracy in the Second Degree, two years at Level 5 suspended. All of the sentences were to run consecutively to one another. Restitution was also ordered in the amount of $6,461.

In this direct appeal, Burrell has raised three issues. First, he argues that the decision of the Superior Court to admit the out-of-court statement of Danny Fenwick, Jr., as testified to by Officer Disharoon, of the decedent's saying "please don't shoot me" immediately prior to the gunshot was reversible error. Second, Burrell contends that the failure of the Superior Court to grant the defendant's motion for acquittal at the conclusion of the State's case was reversible error. Third, Burrell submits that the failure of the trial judge to instruct the jury with regard to requested defense instructions when there was an evidentiary basis for doing so deprived the defendant of a fair trial and due process of law.

We have carefully considered each of Burrell's arguments. We have concluded that the record reflects no reversible error. Accordingly, the judgments of the Superior Court must be affirmed.

### Facts

On May 19, 1998, William Davis was living with Dan and Dolly Fenwick and their nine-year-old son, also named Danny M. Fenwick, Jr. ("Danny"), in a mobile home located north of Dover. Davis sold marijuana while he lived with the Fenwicks. He kept approximately $20,000 in cash in a safe under his bed. In April 1998, William Scott, Davis' former roommate, was present in the Fenwicks' home when Davis removed $4,500 in cash from the safe to purchase a car.

According to Justin L. Burrell, who was 17-years-old in May 1998, William Scott developed a plan to steal Davis' money. Scott enlisted Burrell's assistance in the robbery plan. The two went to the trailer park on May 18, 1998, in order for Scott to point out the Fenwick residence to Burrell. Earlier, Scott drew a map of the intended robbery location and gave the map to Burrell.

The morning of May 19, 1998, Scott gave Burrell a yellow backpack and a .380 caliber black and silver automatic handgun. Micah Cuffee, Scott's next door neighbor, was present in Scott's residence that same morning. Cuffee saw Scott give Burrell the backpack and noticed a small caliber automatic handgun fall out of the backpack. Burrell left Scott's home with the gun in the backpack and walked to the Fenwick residence.

Disguised in a wig, hat, sunglasses, and his sister's makeup, Burrell knocked on the Fenwick trailer door on the morning of May 19, 1998. Danny M. Fenwick, Jr.,

who had stayed home from school with a sore throat that day, observed his mother answer the door. Burrell had the automatic handgun in his hand. He forced his way inside when Dolly Fenwick answered the door. Burrell knew that the money was under the bed in William Davis' room.

Young Danny observed Burrell barge into the house, hit his mother with the handgun and then drag Dolly Fenwick by the hair into Davis' bedroom. Danny Fenwick, Jr. heard Burrell repeat over and over "Where is it?", when Burrell and Dolly Fenwick were in Davis' bedroom. Danny also heard Burrell say, "I'll shoot Danny, *too*." After a gunshot, Burrell said, "Oh, I better get out of here." When Burrell left, Danny went to a neighbor's house and the police were called.

Testifying in his own defense at trial, Burrell admitted going to the Fenwick trailer with a gun in his hand, forcing his way into the home, striking Dolly Fenwick twice in the head with the gun, yelling at Dolly Fenwick and telling her not to look at him, threatening to shoot her, and holding Dolly's hair in one hand while pointing the gun at her head. When the gun discharged, Dolly Fenwick was crouched on her knees on the floor of Davis' bedroom and Burrell was standing behind her, holding her by the hair.

Burrell denied any deliberate intention to kill Dolly Fenwick and testified that that the gun went off accidentally. Burrell claimed that he did not think the gun was loaded and that William Scott told him there were no bullets in the gun. Burrell conceded that he never checked to see if the gun was loaded. Burrell conceded during cross-examination that the handgun did not go off in the backpack as he walked from Scott's house to the Fenwick trailer, when he forced his way into the mobile home, when he struck Dolly Fenwick twice in the head with the gun, or at any other time.

At the time of her death, Dolly Fenwick was 5' 2" tall and weighed 115 pounds. The police discovered Dolly Fenwick's body on the trailer floor between the bed and bureau in Davis' bedroom. According to the Assistant State Medical Examiner, Dolly Fenwick's bullet wound was a close contact wound indicative of a gun being held tight against her scalp. The bullet was found lodged in Dolly Fenwick's neck.

### Section 3507 Statement Was Harmless Error

Nine-year-old Danny M. Fenwick, Jr. was the first prosecution witness at trial. The second prosecution witness was Delaware State Police Detective Thomas Disharoon. When Detective Disharoon was asked what Danny said on the day of the homicide, defense counsel objected, stating:

> The Supreme Court clearly said in *Smith* that in order for 3507 to be brought in, the out-of-court declarant first has to be questioned and asked questions touching upon the out-of-court statement.

> There is no foundation about Danny talking to this man. It may be moot, but I don't know what he's going to say. I may waive the objection if I know what he's going to say, but he hasn't set the foundation.

The Superior Court Judge ruled:

> You got him to say there's more than one officer he talked to and asked him what he talked to them about, and he said questions very similar to what you're asking me, plus what did the guy look like, things of that nature.

> Based upon that record and the age of the child, I'm not going to require that he be put back on the stand.

> You may question him specifically because I think there has been a sufficient foundation, although it's a minimally sufficient foundation, to allow him to go into the questioning, because the young child indicated that there were several officers he talked to about what he saw, and I believe, speaking in earlier testimony, summarizing all the conversations

he had with the officers, and he was not picking and choosing which ones he may have made statement to.

Thereafter, Detective Disharoon related three Section 3507 witness statements by Danny in his subsequent trial testimony.[1] Defense counsel declined to cross-examine the police officer in order not to "attenuate" the prior objection.

On appeal, Burrell focuses his argument on Danny's 3507 statement that he heard Dolly Fenwick say to Burrell "please don't shoot me." Burrell argues the admission of that statement, over a defense objection was reversible error. According to Burrell, that alleged error "undermines confidence in the verdict because of the potentially devastating effect to the defense of this one isolated, yet potentially devastating, remark and which was received by the jury in an untested and unchallenged form."

In *Smith*, this Court held out that "the introduction of a § 3507 statement cannot be timed so as to place any strategic burden on the non-offering party."[2] The defense objection at trial was that the State had not complied with the foundation requirement for admission of the prior out-of-court Section 3507 statement of Danny to Detective Disharoon.[3] We agree that the Superior Court's admission of the "please don't shoot me" statement was contrary to the "timing" requirement of our holding in *Smith* and constituted legal error.[4] Nevertheless, we have also concluded that the Superior Court's legally erroneous departure from the Smith "timing" requirement was harmless error.[5]

The record reflects the jury had already heard Danny Fenwick testify that, while in Davis' bedroom with his mother, Burrell said "I'll shoot Danny, too." Given this prior witness testimony, our focus must be on the effect of the additional Section 3507 statement repeating the mother's plea to "please don't shoot me." The claim that Burrell's lack of intent defense was irreparably damaged by admission of Danny's Section 3507 statement to Detective Disharoon is not supported by the record.

Burrell was not convicted of first degree intentional murder. He was convicted of the lesser-included homicide offense of manslaughter where a reckless intent was required. Thus, Burrell was successful in convincing the jury that he did not act intentionally in shooting Dolly Fenwick. The felony murder conviction was consistent with the jury's manslaughter verdict because it reflected that a degree of homi-

---

1. 11 *Del. C.* § 3507 reads in pertinent part:

   (a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

   (b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.

2. *Smith v. State*, Del.Supr., 669 A.2d 1, 8 (1995).

3. *See generally Demby v. State*, Del.Supr., 695 A.2d 1152, 1163 (1997).

4. *See* D.R.E. 103(a); Del.Super.Ct.Crim. R. 52(a); *Chapman v. California*, 386 U.S. 18,

24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See generally Jackson v. State*, Del.Supr., 643 A.2d 1360, 1369 (1994); *Stephenson v. State*, Del. Supr., 606 A.2d 740, 742 n. 4 (1992).

5. D.R.E. 103(a); Del.Super.Ct.Crim. R. 52(a); *Chapman*, 386 U.S. at 24, 87 S.Ct. 824. *See also Seward v. State*, Del.Supr., 723 A.2d 365, 372 (1999); *Nelson v. State*, Del.Supr., 628 A.2d 69, 77 (1993) (*quoting Johnson v. State*, Del.Supr., 587 A.2d 444, 451 (1991) ("An error in admitting evidence may be deemed 'harmless' when 'the evidence exclusive of the improperly admitted evidence is sufficient to sustain a conviction.' ")); *Van Arsdall v. State*, Del.Supr., 524 A.2d 3, 10 (1987) ("[T]his Court has consistently refused to reverse convictions for errors found to be harmless."); *Fisher v. State*, Del.Supr., 41 A. 184, 185 (1898) ("It is not every error that will justify reversal and it is not every mistake ... that will warrant the setting aside of the judgment of that tribunal.").

cide (manslaughter) had occurred during the commission of a felonious robbery.

### Evidence Sufficient

■ Count I of the grand jury indictment, the first degree intentional murder charge, alleged that "Justin Burrell, on or about the 12th day of May, 1998, in the County of Kent, State of Delaware, did intentionally cause the death of Dolly Fenwick." Count II of the indictment, the first degree felony murder charge, alleged that "Justin Burrell, on or about the 19th day of May, 1998, in the County of Kent, State of Delaware, did recklessly cause the death of Dolly Fenwick in the course of committing robbery in the first degree." In his opening statement to the jury before the presentation of any evidence, defense counsel for Burrell conceded that the defendant was guilty of first degree robbery.

At the conclusion of the State's case-in-chief, Burrell moved for a judgment of acquittal as to the two homicide counts. Defense counsel argued that the State had not "demonstrated a prima facie case with regard to intention or recklessness ...." The Superior Court denied the partial motion for judgment of acquittal as to the two first degree murder charges (intentional murder and felony murder) and ruled:

> ... [T]he court is required to consider the sufficiency of the evidence in the light most favorable to the State.

> The mental state of the defendant is ... reached from all the facts that are considered, a review of the circumstantial evidence as well as direct evidence of the facts of the case.

> It is clear that at least from the evidence that has been presented by the State at this point in time that Mr. Burrell went to Miss Fenwick's residence with a gun drawn, forced her into a bedroom, and at some point in time a shot was fired, and a gun was directly adjacent to Miss Fenwick's head. That shot was the one that caused her death.

> The jury can consider all those facts together with the testimony of the experts that have occurred to determine, based upon its review, that the actions taken by Mr. Burrell at that point in time was intentional and if not intentional, at least was reckless, and I think there is clearly sufficient evidence based upon all of the evidence that's been presented that the jury could reach that conclusion if it would believe that the case as present by the State.

> So based upon that, the motion for dismissal of those charges will be denied.

On appeal, Burrell argues that "the only evidence that the State had regarding the circumstances of the death other than the fact that the defendant and the decedent were in the bedroom at the time of the shooting leading to her death came from the statement of the defendant that the State chose to put into evidence as part of its case." Accordingly, Burrell argues that the State's evidence was insufficient "for any rational juror to conclude that the defendant either intentionally or recklessly caused the death of the decedent in this matter." The State submits that Burrell's insufficiency of the evidence argument, as to the two homicide counts, misconstrues the strength of its circumstantial evidence and, in particular, disregards the trial testimony of Danny.

On direct examination, Danny testified that Justin Burrell barged into his home, hit his mother with a gun "a couple of times," dragged Dolly Fenwick by her hair into Davis' bedroom, "and shot her." When Danny was asked at trial if he heard Burrell say anything during this attack on his mother, Danny replied: "Yeah. He said when he was dragging her through the hallway, he said 'I'll shoot Danny, too.'" Danny also testified that heard Burrell ask his mother "Where is it?" and Burrell repeated that question "over and over again."

■ This Court reviews claims of insufficient evidence to determine whether, viewing all the evidence in the light most

favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[6] A person acts "intentionally" with respect to an intentional first degree murder charge under the provisions of 11 *Del. C.* § 636(a)(1) when "it is the person's conscious object to engage in conduct of that nature or to cause that result."[7] Burrell's statement to the homicide victim that "I'll shoot Danny, too" could reasonably be interpreted by the jury as an expression of a conscious intent to cause Dolly Fenwick's death by shooting her and, if necessary, her son also.[8] Similarly, a person acts "recklessly" when he "is aware of and consciously disregards a substantial and unjustifiable risk ... [which] will result from the conduct."[9] A rational jury could conclude that by pointing a gun at Dolly Fenwick's head and threatening to shoot her and her son, Burrell recklessly caused her death during the commission of the robbery when the gun in Burrell's hand discharged and killed Mrs. Fenwick. On the basis of the evidentiary record developed during the State's case-in-chief, the defense motion for judgment of acquittal as to the two homicide charges was properly denied.

### *Mistake of Fact Instruction Properly Denied*

Among the defense requested jury instructions were instructions on accident and ignorance or mistake of fact as defined in 11 *Del. C.* § 441(1). The trial judge did instruct Burrell's jury as to the defense of accident and stated:

> Now, finally before leaving the murder offense, I want to discuss the defendant's contention that he may have shot Dolly Fenwick by accident.

> If you find the shooting was accidental, then defendant would not have had the required mental state to commit the homicides that are charged in the indictment.

> It is the law in this state that no person may be found guilty of a criminal offense without proof that he had the state of mind required by law defining the offense which I have mentioned previously to you.

> An accident, for purposes of this case, may be defined as a sudden and unexpected event occurring without intent or volition due to carelessness, unawareness, ignorance or a combination of these which produces an unfortunate result. It is an unforeseen, unplanned, fortuitous event.

> In considering whether all the elements of the crimes charged or of the lesser included offenses have been proven beyond a reasonable doubt, you must consider whether the evidence as to accident raises a reasonable doubt as to the defendant's guilt.

> If the evidence as to accident creates a reasonable doubt as to the defendant's guilt, then the defendant must be found not guilty.

While the Superior Court's jury instruction on accident did mention the concept of "ignorance" as negating the required mental state for the homicide charges, defense counsel for Burrell at trial also requested a separate instruction pursuant to the provisions of 11 *Del. C.* § 441(1) as to the affirmative defense of ignorance or mistake of fact.

Burrell argues that he should have received a jury instruction on the affirmative defense of ignorance or mistake of fact

---

6. *Barnett v. State,* Del.Supr., 691 A.2d 614, 618 (1997); *Monroe v. State,* Del.Supr., 652 A.2d 560, 563 (1995); *Morrisey v. State,* Del. Supr., 620 A.2d 207, 213 (1993).

7. 11 *Del. C.* § 231(a)(1). *See generally Plass v. State,* Del. Supr, 457 A.2d 362, 365–66 (1983).

8. *See generally Seward v. State,* Del.Supr., 723 A.2d 365, 369 (1999); *Cline v. State,* Del. Supr., 720 A.2d 891, 892 (1998) (per curiam); *Liket v. State,* Del.Supr., 719 A.2d 935, 939 (1998) (per curiam); *Davis v. State,* Del.Supr., 706 A.2d 523, 525 (1998) (per curiam).

9. 11 *Del. C.* § 231(c).

because the statutory provision of 11 *Del. C.* § 441(1) applied to his case. Burrell claims that the Superior Court committed reversible error in refusing to instruct his jury on the affirmative defense of ignorance or mistake of fact because "there was a rational basis in the evidence which warranted the jury being instructed that if the defendant believed that the gun was unloaded and/or that the safety was engaged as to prevent discharge of the weapon, then it was for the jury to decide whether or not that mistake of fact arose to the level of being able to negate a reckless state of mind."

■ Eleven *Del. C.* § 441(1) defines the affirmative defense of ignorance or mistake of fact, in pertinent part, as follows:

> In any prosecution for an offense, it is a defense that the accused engaged in the conduct charged to constitute the offense under ignorance or mistake of fact if:
>
> (1) the ignorance or mistake negatives the state of mind for the commission of the offense. . . . [10]

The question presented in this appeal is whether there was a rational basis in the evidence presented such that Burrell was entitled to a jury instruction that his alleged ignorance or mistake of fact negated the required state of mind for the two homicide charges. The standard of appellate review for denial of a defense requested affirmative defense jury instruction on ignorance or mistake of fact pursuant to 11 *Del. C.* § 441(1) is plenary or *de novo*.[11]

The 1973 Commentary to the Delaware Criminal Code discussing 11 *Del. C.* § 441 is instructive in defining some of the limitations of the affirmative defense of mistake of fact, particularly situations alleged to fall within subsection (1). The commentary notes, in part:

> One of the most important principles underlying this Criminal Code is that the defendant ought to be judged by his subjective culpability. If he believes that a certain state of facts exists which would make his activity lawful, he ought not to be held criminally liable, unless the crime is one of strict liability or of criminal negligence. In the latter case, a defense would be denied only when the defendant was criminally negligent in not properly informing himself about the true state of facts. . . . .
>
> Note that defendant's mistake must make some difference to his criminal liability before he is given a defense. Thus, for example, if he would still be committing the crime if the facts were as he thought them, this section would provide no defense.[12]

Burrell was not convicted of first degree intentional murder. Both of Burrell's homicide convictions in this case for manslaughter and felony murder required only that the jury find that Burrell acted with recklessness. Eleven *Del. C.* § 231(c) defines recklessness by pointing out that "[a] person acts recklessly with respect to an element of an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from the conduct."[13]

■ The New Jersey Supreme Court recently held that "[o]f itself, a belief that the gun is loaded or unloaded does not negate the culpable mental state for the crime of manslaughter. Thus, one who discharges a gun, believing it to be unload-

---

**10.** 11 *Del. C.* § 441(1). Burrell does not argue that either of the two remaining subsections of 11 *Del. C.* § 441 are applicable in his case.

**11.** *Lunnon v. State,* Del.Supr., 710 A.2d 197, 199 (1998) (per curiam); *Seth v. State,* Del. Supr., 592 A.2d 436, 439 (1991).

**12.** Commentary to Delaware Criminal Code at 100–01 (1973).

**13.** 11 *Del. C.* § 231(c).

ed, is not necessarily innocent of manslaughter." [14] We agree. Burrell conceded that he never checked to see if the gun was loaded when he received the weapon from William Scott.

 Even if the jury believed that Burrell did not know the gun was loaded or that the safety was not on, his conduct would still not be excused because he was acting recklessly in not checking to see if the gun was loaded, holding the gun tight against Dolly Fenwick's scalp, and then pulling the trigger. There was no rational basis in the evidence presented at trial to support a finding that Burrell's conduct on the day of the homicide was anything less than reckless.

Any alleged ignorance or mistake of fact by Burrell did not excuse his reckless conduct under the particular facts of this case. [15] Accordingly, the Superior Court properly denied Burrell's request to instruct the jury on the affirmative defense of ignorance or mistake of fact as defined in 11 *Del. C.* § 441(1).

### Conclusion

The judgments of the Superior Court are affirmed.

---

**14.** *State v. Sexton,* 160 N.J. 93, 733 A.2d 1125, 1131 (1999).

**15.** *See id.* at 1130–31. *See also State v. Cavness,* Haw.Ct.App., 80 Hawai'i 460, 911 P.2d 95, 100 (1996).