Courtney L. BARNES, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 588,2003.

Supreme Court of Delaware.

Submitted: July 14, 2004.

Decided: Aug. 18, 2004.

Benjamin A. Schwartz of Schwartz & Schwartz, Dover, for appellant.

John Williams of the Department of Justice, Dover, for appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

STEELE, Chief Justice:

A Superior Court jury convicted Courtney Barnes of armed robbery. On appeal, Barnes challenges the admission of the store's surveillance videotape because it was altered from its original slow speed time-lapse format into real time by a computer program. Because the trial judge authenticated the tape and weighed its probative value as altered against unfair prejudice within a reasonable range of discretion, he did not err when he admitted the reformatted tape of the robbery. Barnes also challenges the admission of an eyewitness's pretrial out-of-court statements. Although we must conclude that the presentation of the out-of-court statements did not comply with prescribed procedure carefully designed to assure that the statements were voluntarily made and reasonably accurate, in the context of this case, Barnes nevertheless received a fair trial. Therefore, we affirm the judgment of the Superior Court.

## I.

On November 2, 2002, Courtney Barnes and Andre Monk robbed a Dover convenience store. The store's time-lapse surveillance video camera recorded images of the red bandana-clad robbers during the incident. Brian Herron and James Alderson were patrons in the store at the time of the robbery. Alderson fled and notified the police just as Barnes and Monk entered the store. During the robbery, Monk held a knife underneath Herron's neck. Barnes pointed a gun at the store's clerk, Charles Waite, and told him to get down on his knees. Waite complied because he believed that Barnes had "what looked like a real gun." Barnes placed the "weapon" against the back of Waite's head and demanded money from the cash register. Barnes and Monk stole approximately $60 from the register and fled. Six days later, police searched a house occupied by Barnes and Monk and recovered two red bandanas and a plastic toy gun. Monk and Barnes both eventually confessed to robbing the store using a knife and a fake gun. Neither defendant presented any witnesses, nor did either testify at their joint trial.

## II.

Barnes first challenges the trial judge's decision to admit the store's time-lapse surveillance videotape. A computer program converted the videotape to normal speed in order to present a fair and accurate representation of the alleged robbery. Barnes maintains that the alteration destroyed the tape's authenticity and should not have been admitted into evidence. We review a trial judge's decision regarding the authenticity of the surveillance videotape for abuse of discretion.[1]

At trial, the State sought to introduce a normal speed videotape of the robbery

---

1. See *Cabrera v. State*, 840 A.2d 1256, 1263–64 (Del.2004); *Demby v. State*, 695 A.2d 1127, 1133 (Del.1997) ("In general, the decision whether evidence has been sufficiently authenticated in accordance with D.R.E. 901(a) is a matter relegated to the sound discretion of the trial judge.").

that had been extracted from the store's time-lapse surveillance.[2] Defense counsel objected to its admission, suggesting that the converted video constituted an unauthentic, altered version of the original surveillance video, because the converted video appeared to present the events in slow motion. Barnes also claimed that the video should be excluded under D.R.E. 403 because it was unfairly prejudicial. The trial judge viewed both the original time-lapse video and the converted tape before ruling on its admissibility. The trial judge determined that the converted tape was a relevant, reliable and fair depiction of the events as they occurred and that the tape's probative value substantially outweighed any resulting prejudice to Barnes. We agree. The trial judge acted appropriately within his discretion by admitting the converted surveillance videotape.

### III.

■ Second, Barnes insists that the trial judge erred by admitting into evidence a pretrial statement by Charles Waite to the police, because the State failed to comply with the timing requirements of *Smith v. State*[3] in connection with the statement's admission pursuant to 11 *Del.C.* § 3507.[4] Statements offered under § 3507 must be offered before the conclusion of the direct examination of the declarant.[5] The prosecutor must inquire about the voluntariness of the declarant's pretrial out-of-court statement during direct examination of the declarant, and the judge must make a ruling on voluntariness before submitting it to the jury for consideration.[6]

■ We review a ruling on the admissibility of a robbery victim's out of court statement to an investigating police officer under an abuse of discretion standard.[7] If we conclude that an abuse of discretion has occurred, we next determine whether it caused sufficient prejudice to deny the accused a fair trial.[8]

On the first day of the trial, Charles Waite testified about the robbery and

2. This real time format, which depicted the robbery at normal speed, resulted from the police uncompressing the time-lapse format of the original surveillance tape using a computer program.

3. 669 A.2d 1, 7 (Del.1995).

4. § 3507. Use of prior statements as affirmative evidence. (a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value. (b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party. (c) This section shall not be construed to affect the rules concerning the admission of statements of defendants or of those who are codefendants in the same trial. This section shall also not apply to the statements of those whom to cross-examine would be to subject to

possible self-incrimination. (11 *Del. C.* 1953, § 3509; 57 *Del. Laws,* c. 525.)

5. 669 A.2d at 8.

6. *Id.* at 7; (stating: "The offering party must establish that the out-of-court statement was voluntary, either during the direct examination of the witness or, if the witness denies that the statement was voluntary, on *voir dire.* The trial judge 'must be satisfied that the offering party has shown by a preponderance of the evidence that the statement was voluntarily made, and must render an explicit determination on the issue before admitting it for the jury's consideration.'" *citing Hatcher v. State*, 337 A.2d 30, 32 (Del.1975)).

7. See generally *Floudiotis v. State*, 726 A.2d 1196, 1202 (Del.1999); *Weber v. State*, 547 A.2d 948, 955 (Del.1988).

8. *Burrell v. State*, 766 A.2d 19, 23 (Del.2000) ("...the Superior Court's legally erroneous departure from the Smith 'timing' require-

about his conversation with Delaware State Police Detective Thomas Disharoon after the robbery. Waite did not explicitly state that he spoke voluntarily with Disharoon, but neither was there any suggestion from his direct testimony that the interview was conducted under compulsion or otherwise involuntary. During his direct testimony, Waite stated that he believed there was a handgun, that it was a revolver with a barrel larger than that of a BB-gun or a squirt gun, and that it felt cold and heavy when pressed against his neck. Waite testified that he only saw the gun for one second and that he did not get a "great" look at it, but only a "fair" look because he was specially trained by ShoreStop not to look at robbers, but to look away and comply. Waite was excused subject to recall after concluding his testimony.

The next day, the State called Disharoon to describe what Waite had told him about the robbery. Defense counsel did not immediately object, but waited until the prosecutor asked the detective if Waite had described "any of the weapons" from the robbery.[9] In response to the objection, the prosecutor replied: "Your honor, it is a 3507 statement. They are subject to recall if the defense wants to recall them." The judge overruled the objection.[10] Neither counsel nor the trial judge appeared to have knowledge of the procedure required to be followed when the State intended to introduce and rely on a 3507 statement.

Disharoon testified about Waite's description of the man who approached him at the counter and of the weapons used during the robbery. Waite described a "black handgun with a very long barrel, and when it was pressed against his neck he could feel the metal, the cold metal of it." Disharoon was also present at a March 21, 2003 interview at which Waite, ". . . was asked if the gun was real, and he explained to us that the gun was real, there was no doubt in his mind that the gun was real that was—that the robber had."

After Disharoon and other police officers testified, Waite was later brought back for additional cross-examination. At that time, defense counsel did not ask Waite whether either of his statements to the police was voluntary or coerced.

*Smith* requires that the offering party must prove the voluntariness of a pretrial statement during direct examination of the declarant or on *voir dire* if the declarant denies that the statement was voluntarily made.[11] That was not done here. Waite did not say whether he voluntarily gave his statements to Disharoon on the night of the robbery or at the March 21, 2003 interview, and the State did not explore the voluntariness of the statement on direct. *Smith* also requires that the trial judge make a finding of the voluntariness of a pretrial statement before allowing the jury to hear it.[12] The record suggests that

---

ment was harmless error."); D.R.E. 103(a); Del. Super Ct. Cr. R. 52(a).

9. Defense counsel stated: "Your Honor, I am going to object at this time. This is evidence that we have heard from two witnesses at the scene. We have seen the videotape. It is cumulative. And furthermore, it is hearsay, and it doesn't look like the people that told the officer the story are here to be cross-examined."

10. The Superior Court Judge stated: "Objection overruled. That's correct. However, I don't want—Mr. Schwartz is just dealing on an issue that may bear some merit. I don't want to go into unnecessarily cumulative evidence here."

11. *Smith*, 669 A.2d at 7.

12. *Id.*

counsel and the trial judge were unaware of the requirements of *Smith*.

The admission of Waite's pretrial statement also failed to satisfy the explicit requirement that the declarant be "present" during the admission of an out-of-court pretrial statement.[13] Waite testified the day before Disharoon, and was recalled the day after. He was not "present" in the courtroom during Disharoon's testimony. The purpose of this requirement seems obvious—the declarant would then be in a position to respond to questions on cross or direct about the substance for the context in which the statement was made as represented by the State's witness offering his hearsay version.

In the matter *sub judice*, the trial judge and the prosecutor both failed to recognize and comply with the requirements for the admission of the out-of-court pretrial statements. We must conclude that the trial judge erred by admitting the evidence over the defense's objection. Having so concluded, we must next consider, however, whether the error caused such prejudice that it denied the accused a fair trial.[14]

Section 3507 statements must "touch upon the events perceived and the out of court statement itself."[15] In addition to describing the statements he made to Disharoon on the night of the robbery, Waite's direct testimony described facts about the robbery in detail as he remembered them. His testimony outlined the general course of the robbery; his recollection that the robbers wore red bandannas; his belief that the gun was real; his observation that it was a revolver; and his sensitivity to the "cold metal of the gun" pressed against his neck.

After reviewing the record carefully, we conclude that despite the failure of the trial judge to apply the law properly, the arguable prejudice to Barnes caused by the error cannot be said to have denied him a fair trial. There was ample evidence, apart from Waite's two out-of-court pretrial statements, that supported Barnes' convictions. Most critically, Barnes and his co-defendant confessed to the robbery at the time police executed the search warrant at their residence. Two eyewitnesses, Waite and Herron, testified in detail about the robbers and the weapons they used during the robbery. Waite's direct testimony captured the essence of the pretrial out-of-court statements' content and Waite was subject to cross-examination. Appellant does not claim surprise over the content of the out-of-court statements, nor did his counsel offer any factual basis at trial or on appeal to suggest that either statement may have been coerced or otherwise involuntary. The store's video surveillance tape corroborated the eyewitness testimony. Finally, a toy gun and the two red bandanas were recovered when the police raided Barnes' and his co-defendant's residence. Neither of the co-defendants testified nor offered any witnesses in their defense. Given this record, we conclude that the trial judge's failure to know and apply the law correctly here did not deny Barnes a fair trial. Although the procedure here used to admit § 3507 statements was improper, there is sufficient, independent evidence in the record that fully supports the conviction.

## IV.

We conclude that the clear error here was harmless beyond a reasonable doubt.

---

13. 11 *Del. C.* § 3507(a).

14. *Burrell*, 766 A.2d at 23; D.R.E. 103(a); Del. Super Ct. Cr. R. 52(a).

15. 669 A.2d at 6 (citing *Keys v. State*, 337 A.2d 18, 23 (Del.1975)).

The judgment of the Superior Court is hereby AFFIRMED.