Justin BURRELL, Defendant–
Below, Appellant,

v.

STATE of Delaware, Plaintiff–
Below, Appellee.

No. 605, 2007.

Supreme Court of Delaware.

Submitted: April 30, 2008.
Decided: June 17, 2008.

Joseph M. Bernstein, Esquire, Wilmington, Delaware, for appellant.

John R. Williams, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice.

The defendant-appellant, Justin Burrell, appeals from the Superior Court's denial of his second Rule 61 motion for post-conviction relief.[1] His sole argument on appeal is that his conviction for Felony Murder in the First Degree should be vacated because the homicide was not committed "in furtherance of" the underlying felony of Robbery in the First Degree. We have concluded that argument is without merit. Therefore, the judgment of the Superior Court must be affirmed.

### Procedural History

Following a jury trial in August 1999, Burrell was convicted in the Kent County Superior Court of Manslaughter, as a lesser-included offense of Intentional Murder in the First Degree, Felony Murder in the First Degree, Robbery in the First Degree, Burglary in the Second Degree, Conspiracy in the Second Degree, and four counts of Possession of a Firearm During the Commission of a Felony.[2] On direct appeal, this Court affirmed all of Burrell's convictions.[3] In 2004, the Superior Court denied Burrell's first Rule 61 motion for post-conviction relief.[4] That judgment was also affirmed by this Court on appeal.[5]

In 2006, Burrell filed a second Rule 61 motion for post-conviction relief. In that motion, Burrell alleged that his conviction for Felony Murder in the First Degree should be vacated because, as a matter of law, the homicide was not committed "in furtherance of" the commission of the underlying offense of Robbery in the First Degree. The motion asserted that the claim was based on a retroactive application of our decision in *Williams v. State*,[6] which had not been decided at the time of Burrell's trial. Burrell's second Rule 61 motion was stayed by the Superior Court pending this Court's decision in *Chao v. State*,[7] which ultimately held that our holding in *Williams* applied retroactively.[8]

### Second Rule 61 Motion Denied

In deciding Burrell's second Rule 61 motion and applying the *Williams* decision retroactively to Burrell's case, the Superi-

1. Super. Ct.Crim. R. 61.

2. *Burrell v. State,* 766 A.2d 19, 21 (Del.2000).

3. *Id.*

4. *State v. Burrell,* 2004 WL 2829038, at *1 (Del.Super. Apr. 26, 2004).

5. *See State v. Burrell,* 2004 WL 2829038 (Del.Super.), *aff'd,* 871 A.2d 1127 (Del.2004).

6. *Williams v. State,* 818 A.2d 906 (Del.2002).

7. *Chao v. State,* 931 A.2d 1000, 1000–01 (Del. 2007).

8. *Id.* at 1000.

or Court framed the issue before it as: "whether there was evidence introduced during [Burrell's] trial to support a finding that the murder of Dolly Fenwick was done with the intent to progress the robbery felony forward." [9] The Superior Court answered that question in the affirmative, after finding that the facts of the case supported Burrell's conviction for Felony Murder in the First Degree, as required under this Court's holdings in *Williams* and *Chao.* Accordingly, the Superior Court denied Burrell's second Rule 61 motion. That decision is the subject of this appeal.

### Facts

The basic facts relating to Burrell's conviction for Felony Murder in the First Degree were summarized by this Court in its opinion on Burrell's direct appeal:

> On May 19, 1998, William Davis was living with Dan and Dolly Fenwick and their nine-year old son, also named Danny M. Fenwick, Jr. ("Danny"), in a mobile home located north of Dover. Davis sold marijuana while he lived with the Fenwicks. He kept approximately $20,000 in cash in a safe under his bed. In April 1998, William Scott, Davis' former roommate, was present in the Fenwicks' home when Davis removed $4,500 in cash from the safe to purchase a car. According to Justin L. Burrell, who was 17 years old in May 1998, William Scott developed a plan to steal Davis' money. Scott enlisted Burrell's assistance in the robbery plan. The two went to the trailer park on May 18, 1998, in order for Scott to point out the Fenwick residence to Burrell. Earlier, Scott drew a map of the intended robbery location and gave the map to Burrell.
>
> The morning of May 19, 1998, Scott gave Burrell a yellow backpack and a .380

caliber black and silver automatic handgun. Micah Cuffee, Scott's next door neighbor, was present in Scott's residence that same morning. Cuffee saw Scott give Burrell the backpack and noticed a small caliber automatic handgun fall out of the backpack. Burrell left Scott's home with the gun in the backpack and walked to the Fenwick residence.

Disguised in a wig, hat, sunglasses, and his sister's makeup, Burrell knocked on the Fenwick trailer door on the morning of May 19, 1998. Danny M. Fenwick, Jr., who had stayed home from school with a sore throat that day, observed his mother answer the door. Burrell had the automatic handgun in his hand. He forced his way inside when Dolly Fenwick answered the door. Burrell knew that the money was under the bed in William Davis' room.

Young Danny observed Burrell barge into the house, hit his mother with the handgun and then drag Dolly Fenwick by the hair into Davis' bedroom. Danny Fenwick, Jr. heard Burrell repeat over and over "Where is it?", when Burrell and Dolly Fenwick were in Davis' bedroom. Danny also heard Burrell say, "I'll shoot Danny, too." After a gunshot, Burrell said, "Oh, I better get out of here." When Burrell left, Danny went to a neighbor's house and the police were called.

Testifying in his own defense at trial, Burrell admitted going to the Fenwick trailer with a gun in his hand, forcing his way into the home, striking Dolly Fenwick twice in the head with the gun, yelling at Dolly Fenwick and telling her not to look at him, threatening to shoot her, and holding Dolly's hair in one hand while pointing the gun at her head.

---

9. *State v. Burrell,* 2007 WL 3277292, at *2 (Del.Super. Oct. 31, 2007).

When the gun discharged, Dolly Fenwick was crouched on her knees on the floor of Davis' bedroom and Burrell was standing behind her, holding her by her hair.

Burrell denied any deliberate intention to kill Dolly Fenwick and testified that the gun went off accidentally. Burrell claimed that he did not think the gun was loaded and that William Scott told him there were no bullets in the gun. Burrell conceded that he never checked to see if the gun was loaded. Burrell conceded during cross-examination that the handgun did not go off in the backpack as he walked from Scott's house to the Fenwick trailer, when he forced his way into the mobile home, when he struck Dolly Fenwick twice in the head with the gun, or at any other time.

At the time of her death, Dolly Fenwick was 5'2" tall and weighed 115 pounds. The police discovered Dolly Fenwick's body on the trailer floor between the bed and bureau in Davis' bedroom. According to the Assistant State Medical Examiner, Dolly Fenwick's bullet wound was a close contact wound indicative of a gun being held tight against her scalp. The bullet was found lodged in Dolly Fenwick's neck.[10]

### Standard of Review

 Burrell's contention that the killing of Fenwick was not "in furtherance of" the underlying robbery felony presents a mixed question of fact and law.[11] A deferential standard of review is applied to fac-

tual findings by a trial judge. Those factual determinations will not be disturbed on appeal if they are based upon competent evidence and are not clearly erroneous.[12] After the historical facts have been determined, this Court must review the correctness of the trial judge's application of the law to those factual findings. When a question of law is at issue, the standard of appellate review is *de novo*.[13]

### Superior Court's Decision

In concluding that the murder was committed in furtherance of the felonious robbery, the Superior Court relied primarily on Burrell's trial testimony and other statements he had given to the police. In his recorded interview with the police in 1998, Burrell explained:

> She pulled the safe out and started putting it in the bag. And then when I was going toward her, she kind of pushed me, and I went to go hit her, and at some point as he had the safety on too, I figured there was no bullets in it. I went to hit her. The gun went down. I guess my finger hit the trigger. I heard a shot, looked down and her head kind of moved up and back down and she just dropped.[14]

In his cross-examination at trial, Burrell presented a similar recollection of the events just before the shooting when he testified, as follows:

> What happened, she had pulled the safe out. She was putting money in the bag,

10. *Burrell v. State*, 766 A.2d 19, 21–22 (Del. 2000).

11. *Brown v. State*, 897 A.2d 748, 750 (Del. 2006); *Downs v. State*, 570 A.2d 1142, 1144 (Del.1990).

12. *Albury v. State*, 551 A.2d 53, 60 (Del.1988). See also *Ornelas v. United States*, 517 U.S. 690, 696–97, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (finding of historical fact). *Brown v. State*, 897 A.2d at 750 (citing *Lopez v. State*, 861 A.2d 1245, 1248–49 (Del.2004)).

13. *Brown v. State*, 897 A.2d at 750; *Lopez v. State*, 861 A.2d at 1249.

14. *State v. Burrell*, 2007 WL 3277292, at *2 (Del.Super. Oct. 31, 2007).

and the money from the top drawer had fell out, and she was—she just kept on picking it up, and then somehow with her arm, it was her upper body, had pushed back and hit me in my leg, and I went to pull back with my right hand, and that's when the gun went off.

Burrell also testified that: "I don't recall whether I was going to hit her or whether I was moving back from where she had pushed me, I don't know."

After reviewing portions of Burrell's trial testimony and his prior statements, the Superior Court made the following factual findings and reached the following legal conclusion.

> The Court finds that even under the Defendant's own version, he reacted to Ms. Fenwick's movement which he perceived as threatening and intended to prevent her from resisting his demand to put the money and safe in his book-bag and to prevent her from interfering with the robbery. This conduct intended to quash the victim's resistance to the robbery clearly meets the requirements of progressing the robbery forward and complies with the mandates of the *Williams* decision. As such, not only did the shooting occur during the commission of the robbery, it was done in furtherance of the robbery by eliminating the perceived threatening conduct of the victim so that the robbery could be completed.[15]

The historical findings of fact that were relied upon by the Superior Court in deciding Burrell's second Rule 61 motion for post-conviction relief are based upon competent evidence presented at the August 1999 trial. Those factual findings are not clearly erroneous.[16] Burrell's 1998 statement to the police and his 1999 trial testimony support the Superior Court's legal conclusion that the fatal shooting of Fenwick was in furtherance of the planned robbery and that the circumstances of Fenwick's death provided a sufficient factual basis to convict Burrell of felony murder as the statute was then worded.[17] The record reflects that shooting Fenwick did move the felony forward[18] because, as the trial judge pointed out, "[a]s Dolly Fenwick [was] attempting to put the safe and other money into a book bag brought by [Burrell], it appears that she made some movement that [Burrell] perceived as threatening and gave him the impression she intended to either resist or perhaps pull a gun from under the bed."[19]

■ Burrell submits that the requirement that the killing be "in furtherance of" the underlying felony cannot logically be met when the killing itself was unanticipated and unintended, even though it may have been committed with a "reckless" state of mind. In support of that assertion, Burrell cites the *Delaware Criminal Code Commentary*,[20] and contends that

---

15. *Id.* at * 8.

16. *See Anderson v. City of Bessemer*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

17. *See Chao v. State*, 931 A.2d 1000, 1001 n. 4 (Del.2007). Effective May 19, 2004, section 636(a)(2) was amended by eliminating the phrase "in the course of and in furtherance of." That section now provides that person is guilty of "felony-murder" when, "[w]hile en-

gaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony, the person recklessly causes the death of another person." *See* Del.Code ann. tit. 11, § 636(a)(2) (2006).

18. *Williams v. State*, 818 A.2d 906, 913 (Del. 2002).

19. *State v. Burrell*, 2007 WL 3277292, at *2.

20. *Delaware Criminal Code Commentary*, § 635 (1973).

"[t]he killing itself must serve some purpose and cannot be merely a fortuitous event." This Court rejected an analogous argument in Burrell's direct appeal. There, we held that: "[t]he felony murder conviction was consistent with the jury's manslaughter verdict because it reflected that a degree of homicide (manslaughter) had occurred during the commission of a felonious robbery." [21] In denying Burrell's second Rule 61 motion, the Superior Court concluded from the historical facts that Burrell's reckless conduct occurred not only *during* the felonious robbery but *"in furtherance of"* that objective.[22] We agree.

The initial plan was for Burrell to go to the Fenwick trailer in order to commit an "armed robbery." Burrell ended up shooting Fenwick in the head at close range as she was placing the safe and other money, the proceeds of the robbery, in Burrell's bag. The record reflects this reckless force was brought to bear when the gun discharged as Burrell was trying to prevent or overcome what Burrell perceived to be Fenwick's resistance to his taking of the safe and the money.[23] A reckless killing that occurs when the perpetrator is trying to neutralize someone who is resisting or in a position to prevent a robbery is conduct in furtherance of the robbery objective.[24] Therefore, we hold that the historical factual record supports the Superior Court's legal conclusion that Fenwick's murder by Burrell was "in furtherance of"

the armed robbery that Burrell and Scott had planned.

### Jury Instruction Adequate

■ Burrell also argues in this appeal that the felony murder jury instruction was legally deficient because the jury instruction did not specifically track the then existing language of Title 11, section 636(a)(1) of the Delaware Code. At the time, the statute provided that a person is guilty of Felony Murder in the First Degree when "in the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, the person recklessly causes the death of another person." At the 1999 trial, Burrell's jury was instructed that the fourth element of the felony murder charge was that "the killing was in furtherance of or was intended to assist in the commission of the felony of robbery in the first degree." Burrell argues that using the term "assists" encompasses factual circumstance broader from those captured by the term "in furtherance of."

■ Burrell contends that this "subsidiary question" about the propriety of the "assists" language in the 1998 felony murder jury instruction, "was raised in the brief submitted by Burrell in the Superior Court." The Superior Court decision denying the second post-conviction relief motion does not address that legal argument. Since this legal argument is not contained in Burrell's second Rule 61 motion, and was not addressed in the Superior Court's

21. *Burrell v. State,* 766 A.2d 19, 23–4 (Del. 2000).

22. *State v. Burrell,* 2007 WL 3277292, at *3 (Del.Super. Oct. 31, 2007).

23. Del.Code ann. tit. 11, §§ 831, 832 (1998).

24. *Hassan–El v. State,* 911 A.2d 385, 391–92 (Del.2006). *Scott v. State,* 2001 WL 339627, at *2 (Del.Supr. Mar. 28, 2001) ("[A] charge

of felony murder does not require an intentional state of mind and, indeed, the felony murder statute does not include intentional conduct as the necessary state of mind. *See* 11 *Del. C.* § 636(a)(2). Either reckless or criminal negligence is sufficient to sustain a charge of felony murder and the amended indictment alleged recklessness as the state of mind.").

2007 decision, there is some question as to whether the deficient jury instruction claim was really "fairly presented to the trial court." [25] Generally, questions not fairly presented to the trial court are not considered on appeal unless "the interests of justice" mandate such consideration. Assuming *arguendo* that this issue was either properly presented to the trial court or "the interests of justice" require its consideration, we have concluded that Burrell's jury instruction argument is also not a basis for granting him post-conviction relief.

 A trial court's jury instructions are not a ground for reversal if they are reasonably informative and not misleading when judged by common practices and standards of verbal communication. [26] "When the correctness of a jury instruction is raised on appeal, our analysis focuses 'not on whether any special words were used, but whether the instruction correctly stated the law and enabled the jury to perform its duty.'" [27] In the circumstances of Burrell's case, we conclude that any semantic distinction between the word "assists" and the term "in furtherance of" is not of such a magnitude that the jury was either misled as to its function or unable properly to apply the law to the facts of Burrell's case. [28] Accordingly, we hold that the felony murder jury instruction at Burrell's trial was reasonably informative and not misleading. [29]

*Conclusion*

The judgment of the Superior Court is affirmed.

---

**25.** Supr. Ct. R. 8.

**26.** *See Cabrera v. State,* 747 A.2d 543, 544 (Del.2000); *Mills v. State,* 732 A.2d 845, 849 (Del.1999); *Chance v. State,* 685 A.2d 351, 354 (Del.1996); *Probst v. State,* 547 A.2d 114, 119 (Del.1988); *Storey v. Castner,* 314 A.2d 187, 194 (Del.1973).

**27.** *Corbitt v. Tatagari,* 804 A.2d 1057, 1062 (Del.2002)(quoting *Cabrera v. State,* 747 A.2d at 545).

**28.** *See Flamer v. State,* 490 A.2d 104, 128 (Del.1983), *cert denied,* 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983). *see also Corbitt v. Tatagari,* 804 A.2d at 1062 (Del. 2002); *Floray v. State,* 720 A.2d 1132, 1138 (Del.1998).

**29.** *Keyser v. State,* 893 A.2d 956, 960 (Del. 2006).