IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TONY DUNN, | § | |
| | § | No. 659, 2013 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware, in and for |
| STATE OF DELAWARE, | § | New Castle County |
| | § | |
| Plaintiff Below, | § | Cr. I.D. No. 1109019790 |
| Appellee. | § | |

Submitted: September 17, 2014
Decided: September 22, 2014

Before **HOLLAND**, **RIDGELY** and **VALIHURA**, Justices.

# **O R D E R**

This 22nd day of September 2014, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:

1. Defendant below, Tony Dunn ("Dunn"), appeals from his conviction and sentence for Hindering Prosecution. Dunn raises two issues on appeal. First, he contends that the Superior Court erred in admitting the prior out-of-court statement of a witness at trial. Second, he contends that the Superior Court erred in denying his motion for judgment of acquittal. We find no merit to the appeal and affirm.

2.     On September 14, 2011, Dominique Helm ("Helm") was shot in the back outside his mother's home at 124 West 23rd Street in Wilmington. Helm's mother, Nicole, testified that before the shooting she was standing in her kitchen and heard her son arguing with someone. She looked out the window and saw two men, whom she identified at trial as Dunn and his son, Lynell Tucker ("Tucker"). The two men approached her son and told him to go back inside his house. Nicole opened the window and told her son to come inside. She was walking toward her front door when she heard her son trying to open the door. Nicole heard a shot, her front door opened, and her son stepped through the door and collapsed. Police officers arrived at 8:40 p.m. They administered CPR until emergency personnel arrived. Helm was pronounced dead at 9:13 p.m. The forensic expert testified that Helm died from a single gunshot wound to his back.

3.     Helm's cousin, Devin Marsh, testified at trial that he and Helm were on the porch of the house of another cousin, Shakeem Davis ("Davis"). Davis lived in his grandmother's house across the street from Helm's mother. Marsh testified that Tucker came along and told Helm and Marsh that anyone who is "not a Dunn" had to get off the porch. Marsh further testified that Tucker drove off in a green truck but returned on foot a few minutes later. When he returned, according to Marsh, Tucker approached Helm, exchanged words with him, and then punched Helm in the face. During the ensuing fight, Dunn appeared and began hitting

2

Helm. Marsh testified that when the physical fight ended, Helm and Tucker continued to argue and that Tucker then pulled out a gun and shot Helm.

4. Davis testified that he is related to Helm, Tucker, and Dunn. At trial, Davis stated that he was with Helm on the day of the murder. He saw Tucker earlier in the day but claimed not to have seen him later. The State offered into evidence a taped statement that Davis had made to police the day after the murder. The trial court allowed the taped statement into evidence over defense counsel's objections. In that statement, Davis told police that he had been on his grandmother's porch with Helm when Tucker approached and told them that anyone who was not a "Dunn" had to leave and get off of the porch. According to Davis' statement, Tucker left and then came back with his father. Davis was inside his grandmother's house when he heard a gunshot. He ran outside, saw Dunn standing in the area, and saw Helm in the doorway of his mother's house, apparently bleeding.

5. Another witness, Shawn Whalen, testified that on September 14, 2011, he was standing on his porch smoking a cigarette when he saw Helm, whom he knew, in a fist fight with another man, whom he did not know. During the fight, Whalen saw a third man run over and push Helm away. Whalen heard Helm say to the man with whom he had been fighting, "You're lucky your pop saved your life." Whalen testified that he saw the unknown man then pull out a gun and shoot Helm,

3

and that the third person who had interceded in the fight was standing beside the shooter.

6. The evidence at trial established that, after the shooting, Tucker and Dunn left the scene together. Using cell phone tower records, the police were able to track the pair from Wilmington to Florida. At trial, the State introduced evidence of two traffic citations that were issued, one to Tucker and one to Dunn, by South Carolina authorities on September 15, 2011. On September 23, 2011, police apprehended Tucker, who was found hiding in the trunk of a car in Florida. Tucker was arrested on multiple charges including Murder in the First Degree. On September 26, 2011, Dunn was arrested at his residence in Wilmington on a felony charge of Hindering Prosecution.

7. Dunn testified at trial, but Tucker did not. Dunn stated that he was present when Helm was shot. He claimed that Tucker and Helm had fought briefly and that, after the fight, Helm had threatened Tucker. Dunn testified that Devin Marsh was the person who shot Helm. He testified that he feared for his son's life, so he fled with him to Florida. Dunn claimed that he did not know that Tucker was wanted by police and was unaware that Tucker had been accused in Helm's murder until the two had reached Florida. The jury convicted Dunn of Hindering Prosecution. The Superior Court sentenced Dunn to two years in prison followed by six months' probation.

8.    Tucker and Dunn were tried jointly.  At the close of the State's evidence, Dunn moved for a judgment of acquittal.  He argued that the State had failed to prove that he was guilty of hindering the prosecution of his son for first degree murder, as indicted, because Helm was still alive when Dunn and Tucker left the crime scene.  The Superior Court denied Dunn's motion.

9.    Dunn raises two issues on appeal.  First, he contends that the Superior Court abused its discretion in allowing Davis' taped statement to police into evidence because the statement was not voluntary under 11 *Del. C.* § 3507 ("Section 3507").  Second, he argues that the Superior Court erred in denying his motion for a judgment of acquittal.  We find no merit to Dunn's appeal and affirm.

*The Prior Out-of-Court Statement*

10.    Provided that a proper foundation is laid, an out-of-court statement may be admissible under Section 3507 even if the statement otherwise would be inadmissible under the Delaware Rules of Evidence.[1]  A statement offered under Section 3507 must be offered before the conclusion of the direct examination of the declarant.[2]  The prosecutor must inquire about the voluntariness of the statement during the direct examination of the declarant,[3] and the judge must make a ruling on whether the declarant made the statement voluntarily before the

---

[1] *Hassan-El v. State*, 911 A.2d 385, 395 (Del. 2006).

[2] *Barnes v. State*, 858 A.2d 942, 944 (Del. 2004).

[3] *Id.*

5

statement may be submitted to the jury for consideration.[4]  On appeal, we review the trial court's ruling under an abuse of discretion standard.[5]

11.    In this case, Dunn argues that the State failed to establish by a preponderance of the evidence that Davis' out-of-court statement was voluntary. In support of his argument, Dunn cites to an exchange between the prosecutor and Davis in which Davis claimed the police forced him to speak.[6]

12.    However, other testimony by Davis clarifies that Davis had spoken to authorities on two different occasions.  The first occasion was the day after Helm's murder.  The second occasion was during the course of Dunn's trial when Davis was picked up by police and held on a material witness warrant because he failed appear on the day he initially was scheduled to testify.  It was during the second exchange in which Davis claimed the police forced him to speak.[7]  With respect to his first contact with police, Davis testified as follows:

> Q.    Did you, after your cousin was killed, did you speak to them voluntarily?
>
> A.    Yeah, like, I can kind of say yeah, because how they pulled up on me, like, in front of my house, grabbed me up all that.  So I guess you could say yes.

---

[4] *Id.*

[5] *Johnson v. State*, 878 A.2d 422, 427 (Del. 2005) (citing *Barnes v. State*, 858 A.2d at 944).

[6] Appellant's Amended Appendix at A169-70.

[7] Appellant's Amended Appendix at A166.

Q.     When you were speaking to them the day after Dominique was killed, did they force you to say anything?

A.     I don't really – hold on.  You said, like, the day after?

Q.     Yes.

A.     Not really.  They did force me, but not really, wasn't the day after.

Q.     Stick to the day after.

A.     Okay.

Q.     What is your answer for the day after?

A.     No.

Q.     Shakeem –

THE COURT:     No to what question?

THE WITNESS:   No to the first question, first question, sorry.

THE COURT:     Restate the question.

[PROSECUTOR]: The question was the day after Dominique was killed, did Shakeem Davis speak to the police officer, did they force him to speak.

A.     No.[8]

13.     The trial judge concluded that Davis' statement was voluntary and that the State had laid a proper foundation for the admission of the statement.

14.     Our review of the record confirms that, notwithstanding Davis' confusion about the two times he spoke to police, he did testify on the record that

_____

[8] Appellant's Amended Appendix at A170.

7

his initial statement was voluntary. The voluntariness of his statement was confirmed by the officer who interviewed him. There was sufficient testimony to establish by a preponderance of evidence that Davis gave his first statement voluntarily.[9] Accordingly, the trial judge did not abuse his discretion in admitting the statement into evidence.

*Judgment of Acquittal*

15. Dunn's second claim on appeal is that the Superior Court erred in denying his motion for judgment of acquittal. Defense counsel argued below that the State indicted him for hindering the prosecution of Tucker for the crime of Murder in the First Degree, but that the State did not and could not prove that Dunn intentionally hindered the prosecution of the crime of Murder in the First Degree because the victim was not yet deceased when Dunn and his son left the crime scene. At most, Dunn argues that the State may have proven that he hindered the prosecution of the crime of assault, but the State did not prove that he had hindered the prosecution of the crime of murder in the first degree.

16. In response to Dunn's motion, the State argued below that it was only required to prove that Dunn knew that Tucker had "committed acts" that ultimately constituted the crime of Murder in the First Degree, not that the murder itself had been completed. The pertinent language of the statute states:

---

[9] *See Woodlin v. State*, 3 A.3d 1084, 1087 (Del. 2010).

(a) A person is guilty of hindering prosecution when, with intent to prevent, hinder or delay the discovery or apprehension of, or the lodging of a criminal charge against, a person whom the person accused of hindering prosecution knows has committed acts constituting a crime, or is being sought by law-enforcement officers for the commission of a crime, the person accused of hindering prosecution:

>    (1) Harbors or conceals the person; or

>    (2) Warns the person of impending discovery or apprehension; or

>    (3) Provides the person with money, transportation, weapon, disguise or other means of avoiding discovery or apprehension; or

>    (4) Prevents or obstructs, by means of force, intimidation or deception, anyone from performing an act which might aid in the discovery or apprehension of the person or in the lodging of a criminal charge against the person; or

>    (5) Suppresses, by an act of concealment, alteration or destruction, any physical evidence which might aid in the discovery or apprehension of the person or in the lodging of a criminal charge against the person; or

>    (6) Aids the person to protect or profit expeditiously from an advantage derived from the person's crime.[10]

17.    The trial judge agreed with the State, stating, "[t]here is evidence that Mr. Dunn was present at the scene, and was fully aware of the acts which the defendant [Tucker] committed which came to be the crime of Murder First Degree.

---

[10] 11 *Del. C.* § 1244(a).

9

I reject the defense argument, as far as a motion for judgment of acquittal is concerned."[11]

18.    We review *de novo* the Superior Court's denial of Dunn's motion for judgment of acquittal "to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[12]

19.    Dunn cites no legal support for his argument that he could not be found guilty of hindering Tucker's prosecution for the crime of first degree murder on the facts presented here, and we find the argument to be without merit. In addition, Dunn's argument is inconsistent with the plain language of 11 *Del. C.* § 1244(a), which requires the State to prove that the defendant knew the person he was aiding had "committed acts constituting a crime."[13] Accordingly, we conclude that the trial court did not err when it denied Dunn's Motion for Judgment of Acquittal.

---

[11] Appellant's Amended Appendix at A183.

[12] *Hamilton v. State*, 82 A.3d 723, 726 (Del. 2013) (quoting *Priest v. State*, 879 A.2d 575, 580 (Del. 2005)).

[13] 11 *Del. C.* § 1244(a).

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura
Justice