IN THE SUPREME COURT OF THE STATE OF DELAWARE

ANGELINE M. METELUS,

    Defendant Below,
    Appellant,

    v.

STATE OF DELAWARE,

    Plaintiff Below,
    Appellee.

§
§   No.   531, 2017
§
§   Court Below:   Superior Court
§   of the State of Delaware
§
§   ID. No. 1611002981 (S)
§
§
§
§
§

Submitted:   October 10, 2018
Decided:   December 10, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

**O R D E R**

On this 10th day of December 2018, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    Appellant, Angeline M. Metelus, appeals from a Superior Court jury verdict finding her guilty of Aggravated Possession of Heroin in a Tier 5 Quantity, Drug Dealing in a Tier 4 Quantity, and Conspiracy in the Second Degree. She makes four claims on appeal. First, she contends that the Superior Court erred by denying her motion for judgment of acquittal because the State failed to prove the predicate element of venue for any charge set forth in the indictment.[1] Second, she

---

[1] In presenting this issue, Metelus said the trial judge "abused her discretion" by denying the

contends that the Superior Court abused its discretion by denying her motion to suppress all evidence derived from the State's use of a mobile tracking device ("MTD") because the warrant authorizing the use of the MTD provided for tracking the movements of Brandon Ways (her co-defendant), not her. Third, she contends that the Superior Court abused its discretion by denying her motion to suppress all evidence derived from the State's use of the MTD to track her operation of a blue Jeep Cherokee (the "jeep") in the State of New Jersey, because no federal or New Jersey judge or magistrate authorized the use of the MTD in that jurisdiction. Fourth, she contends that the Superior Court abused its discretion by denying her motion to suppress all evidence derived from the State's search of the jeep because the warrant authorizing that search was not supported by probable cause.

(2) Metelus was arrested on November 5, 2016, and charged with the three crimes underlying this appeal. In the months prior to her arrest (since October 2015), the Delaware State Police and the Seaford Police Department were investigating a large-scale drug trafficking operation of Brandon Ways and his associate, Torontay Mann. As part of the investigation, on September 23, 2016, the police requested and obtained a Superior Court warrant authorizing the police to install and use an MTD on the jeep (the "MTD warrant"). The police were told by

---

Motion for Judgment of Acquittal, Appellant's Am. Opening Br. at 3, but Metelus rightly noted that the standard of review for a motion for judgment of acquittal is actually *de novo*, *id.* at 12.

a confidential informant that Ways and Mann had obtained the jeep to transport large amounts of heroin and that the jeep had a large aftermarket hidden compartment for that purpose.

(3)    The MTD warrant provided that "[t]he vehicle is being operated by Brandon Ways" and "[t]he subject of the investigation and person whose movements are to be tracked is Brandon Ways."[2]   It also noted, "Information likely to be obtained by the [MTD] will relate to violations of the Delaware Criminal Code, including but not limited to [drug] offenses . . . transpiring within Sussex, Delaware."[3]   Although the MTD warrant did not contain a geographic limitation for tracking the device, it provided that the MTD "is to be installed within the State of Delaware."[4]   The police installed the MTD on the jeep on October 14, 2016.

(4)    At approximately 4:20 p.m., on November 4, 2016, while visually surveilling the jeep, which was parked in the Seaford Food Lion parking lot (in Sussex County), the police observed an unknown female, subsequently identified as Metelus, get into the jeep and drive away.  The police followed Metelus north through Delaware, over the Delaware Memorial Bridge into New Jersey, and up the New Jersey Turnpike to northern New Jersey, while the chief investigating officer tracked the MTD from Troop 4 in Georgetown, Delaware.

---

[2]  Appellant's Am. Opening Br. Ex. C
[3]  *Id.*
[4]  *Id.*

3

(5) At approximately 7:40 p.m., Metelus exited the New Jersey Turnpike. Sometime before then, the MTD malfunctioned, but the police had maintained physical surveillance as they followed behind her. After she turned off the exit, however, the police lost visual surveillance of the jeep. About 20 minutes later, the MTD regained function, the chief investigating officer informed the officers of the jeep's location, and they were able to regain visual surveillance.

(6) At about 8:26 p.m., Metelus stopped the jeep at a residence at 71 Mitchell Street. The jeep was parked at that location for approximately nine minutes. During this time, the police conducted drive-by surveillance and observed a man approach the jeep and interact with Metelus. After the jeep left the residence, it was driven around "aimlessly without a destination," repeating the same pattern three times.[5] Shortly thereafter, the jeep returned to the residence at 71 Mitchell Street at approximately 9:01 p.m. When the jeep, with Metelus driving, left the residence the second time, it got onto the Garden State Parkway and returned to Delaware.[6]

(7) While this was happening, the police requested and were granted a warrant to search the jeep and Metelus (the "jeep search warrant") upon their

---

[5] App. to Appellee's Answering Br. at B102-03.
[6] The police maintained visual surveillance of the jeep from the time it left the residence the second time until it was pulled over, with Metelus at the wheel, in Dover, Delaware. At no point during that time did Metelus exit the vehicle or allow someone else to drive it.

4

expected return to Delaware. Pursuant to the warrant, the police stopped and searched Metelus and the jeep in Dover. In the jeep, the police found a concealed aftermarket compartment, which contained approximately 1,300 grams of heroin. The police found no contraband on Metelus's person.

(8) In pre-trial proceedings, Metelus joined an Omnibus Motion to Suppress that had been filed by co-defendant Ways. This motion was supplemented by various filings thereafter. Except for one motion not implicated in this appeal, the Superior Court denied all aspects of the motion to suppress.

(9) The indictment alleged that all three of the charged offenses occurred in Sussex County. At the conclusion of the State's case at trial, Metelus moved for a judgment of acquittal on all counts, contending that the State had failed to prove venue for each count beyond a reasonable doubt. The Superior Court denied the motion, finding that any challenge to venue had been waived under Superior Court Criminal Rule 12, and even if there was no waiver, venue was proper under Superior Court Criminal Rule 18, which provides that venue is proper in the county in which any one of the charged offenses occurred. The court explained that the jury could conclude, from the evidence presented, that the conspiracy (Count 3) began in Sussex County, making Sussex County a proper venue under Rule 18. The court then permitted the State to amend the indictment to specify that Counts 1 and 2 took place in Kent County.

(10) Metelus first argues on appeal that the Superior Court erred by denying her motion for judgment of acquittal. This Court reviews an appeal from the denial of a motion for judgment of acquittal *de novo*.[7] Specifically, this Court examines "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of all the elements of the crime."[8] "For the purposes of this inquiry, this Court does not distinguish between direct and circumstantial evidence."[9]

(11) In addition to proving each element of an offense, "[f]acts establishing jurisdiction and venue . . . must also be proved as elements of the offense."[10] Venue "shall be had in the county in which the offense is alleged to have been committed."[11] But when two or more offenses are charged in the same indictment, "the prosecution may be had in any county in which one or more of the offenses is alleged to have been committed."[12] The situs of the crime "may be established by inference."[13]

(12) Metelus argues that 11 *Del. C.* § 232 requires that venue be proved for each crime as a separate element of each crime. However, when § 232 is read together with Superior Court Criminal Rule 18, it is apparent that venue for the trial

---

[7] *Cline v. State*, 720 A.2d 891, 892 (Del. 1998).
[8] *Id.*
[9] *Id.*
[10] 11 *Del. C.* § 232; *see also id.* § 301(b) (requiring each element of an offense to be proved beyond a reasonable doubt).
[11] Super. Ct. Crim. R. 18.
[12] *Id.*
[13] *Thornton v. State*, 405 A.2d 126, 127 (Del. 1979) (per curiam).

as a whole (rather than for each offense individually) must be proved as an element. That is, so long as the State proves beyond a reasonable doubt that at least one of the indicted crimes occurred in the county in which the trial court sits, venue is established as to all offenses in the indictment under Rule 18.

(13) Here, venue was proved as to Counts 1 and 2 of the indictment under Rule 18 because Count 3, the conspiracy charge, made Sussex County a proper venue for the trial. The State presented evidence showing that Count 3 occurred (at least in part) in Sussex County. Metelus got into the jeep in Sussex County and began her journey to New Jersey where it is believed she ultimately received the heroin that was later found in the jeep, all of which constituted the underlying criminal activity for the conspiracy charge. Therefore, the Superior Court did not err in denying Metelus's motion for judgment of acquittal.

(14) Metelus also argues that the Superior Court erred in allowing the State to amend the indictment to provide that Counts 1 and 2 occurred in Kent County. An indictment must be "a plain, concise and definite written statement of the essential facts constituting the offense charged."[14] "The court may permit an indictment . . . to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not

---

[14] Super. Ct. Crim. R. 7(c)(1).

prejudiced."[15]  "Amendment is not permitted if it changes an essential element of the charged offense or prevents the defendant from pursuing his initial defense strategy."[16]  "This Court reviews the Superior Court's decision on a motion to amend an indictment for abuse of discretion."[17]

(15) Metelus argues that amending the indictment to change the location of Counts 1 and 2 constituted a substantive change and thus prejudiced her. Count 3 of the indictment, however, was never altered; it alleged that the conspiracy occurred in Sussex County in both the original and the amended indictment. Because Count 3 properly established venue for all charges under Rule 18, the situs of Counts 1 and 2 was not an "essential element" of either charge. Furthermore, Metelus does not argue that the amended indictment charged an additional or different offense or that her defense would have differed had the original indictment provided that Counts 1 and 2 occurred in Kent County. Accordingly, the Superior Court did not abuse its discretion in allowing the indictment to be amended.

(16) Metelus next argues that the Superior Court erred by denying her motion to suppress because the MTD warrant was directed at the movements of Brandon Ways, not her. "We review the grant or denial of a motion to suppress for

---

[15] *Id.* 7(e).
[16] *Cuffee v. State*, 2014 WL 5254614, at *2 (Del. Oct. 14, 2014) (Table) (internal quotation marks omitted).
[17] *Id.* at *2.

an abuse of discretion."[18]   "[T]his Court will defer to the factual findings of a Superior Court judge unless those findings are clearly erroneous."[19]   We review the trial judge's application of the law to his or her factual findings *de novo*.[20]

(17)   Metelus argues that because the MTD warrant did not name her (but rather named Ways) as the subject of the investigation, the warrant did not authorize the police to track her movements while she drove the jeep.   The warrant provided, "The subject of the investigation and person whose movements are to be tracked is Brandon Ways."[21]   By continuing to track the jeep while she was driving it, Metelus argues, the police violated her rights under the United States and Delaware Constitutions, and therefore, the Superior Court abused its discretion by denying her motion to suppress all evidence derived from the police's use of the MTD.

(18)   However, a warrant may authorize the search of any "conveyance, place or other things" for "[p]roperty obtained in the commission of a crime, whether the crime was committed by the owner or occupant of the . . . place or conveyance to be searched or by another."[22]   "Probable cause is established when a nexus between the items to be sought and the place to be searched appears."[23]   There is no requirement that the owner or user of the property to be searched be suspected of

---

[18] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1285 (Del. 2008).
[19] *State v. Rollins*, 922 A.2d 379, 382 (Del. 2007).
[20] *Burrell v. State*, 953 A.2d 957, 960 (Del. 2008).
[21] Appellant's Am. Opening Br. Ex. C.
[22] 11 *Del. C.* § 2305(2).
[23] *Hooks v. State*, 416 A.2d 189, 203 (Del. 1980).

criminal activity.[24]   Accordingly, there is no requirement that the user of the property be suspected of criminal activity—or even known—at the time the warrant is obtained in order for the warrant to be valid as to the property identified.[25] Therefore, the Superior Court did not abuse its discretion in denying Metelus's motion to suppress all evidence derived from the State's use of the MTD to track the jeep.

(19)   Metelus next argues that the Superior Court erred by denying her motion to suppress all evidence obtained from the police's use of the MTD to track her movements in New Jersey.  The Delaware Code authorizes Superior Court judges to issue warrants "within the limits of their respective territorial jurisdictions."[26]  A warrant authorizing the installation of an MTD on a vehicle is not facially invalid if it complies with the Superior Court's jurisdictional boundaries by specifying that the installation of the MTD must occur within the State of Delaware.[27]   Here, because the MTD warrant specifies that the MTD must be installed in Delaware, it is not facially invalid.

(20)   Metelus argues, however, that the MTD warrant did not, and could not, authorize the police to track the device in New Jersey (the warrant was silent about

---

[24] *Dorsey v. State*, 761 A.2d 807, 813 (Del. 2000) (en banc); *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n.6 (1978).
[25] *See Zurcher*, 436 U.S. at 559 ("[I]t is untenable to conclude that property may not be searched unless its occupant is reasonably suspected of crime and is subject to arrest.").
[26] 11 *Del. C.* § 2304.
[27] *Lewis v. State*, 180 A.3d 40, 2018 WL 619706, at *5 (Del. Jan. 29, 2018) (Table).

whether the police could monitor the MTD if it traveled outside of Delaware). Therefore, Metelus argues, the out-of-state tracking violated her federal and state constitutional rights and the statutory requirement that warrants be limited to the court's territorial jurisdiction.

(21) The Superior Court denied her motion to suppress, ruling that out-of-state tracking was authorized by the MTD warrant because the Superior Court had the authority to approve attaching the MTD to a vehicle located in Delaware and the police installed the MTD in Delaware in accordance with the warrant. The court reasoned, "having the authority to order the attachment of the [MTD] within the [S]tate of Delaware is sufficient to authorize the police to follow that vehicle, whether it is within the jurisdictional boundaries of the perimeters of the [S]tate of Delaware or outside of it."[28]

(22) Because we conclude that the heroin found in the jeep inevitably would have been discovered, we do not address the difficult constitutional and statutory issues raised in this appeal, and we express no opinion thereon. "The 'inevitable discovery' exception to the exclusionary rule 'provides that evidence, obtained in the course of illegal police conduct, will not be suppressed if the prosecution can prove that the incriminating evidence *would have* been discovered through

---

[28] App. to Appellant's Am. Opening Br. at A80.

legitimate means in the absence of official misconduct.'""'[29]   Here, even absent the out-of-state tracking, we are persuaded that the police inevitably would have relocated and searched the jeep and found the heroin.

(23)   First and most importantly, the jeep search warrant application and affidavit did not rely on any information obtained solely as a result of the out-of-state tracking.   The affidavit detailed how the police had been conducting "physical surveillance" of the jeep on November 4, 2016,[30] and explained that the police observed Metelus get into the jeep and drive north through Delaware and into New Jersey.   It continued, "On November 4, 2016, surveillance was maintained in [sic] Angeline Metelus who was still operating the Jeep . . . .   Angeline Metelus was followed to a location known for high drug trafficking."[31]   This information was obtained through visual surveillance.   The affidavit did not recite any of the police observations that were made after the police lost (and subsequently regained) visual surveillance of the jeep.

(24)   Second, even without the aid of the MTD to relocate the jeep in New Jersey, the police would have regained visual surveillance of the jeep once it returned

---

[29] *Hardin v. State*, 844 A.2d 982, 987 (Del. 2004) (emphasis added) (quoting *Cook v. State*, 374 A.2d 264, 267-68 (Del. 1977)); *see also Reed v. State*, 89 A.3d 477, 2014 WL 1494098, at *2 (Del. Apr. 14, 2014) (Table) (finding no inevitable discovery where the police *could have* arrested the driver and then searched him incident to arrest for driving without a license but *would not have* because "the standard practice is not to arrest [an unlicensed] driver").

[30] Appellant's Am. Opening Br. Ex. D ¶ 35.

[31] *Id.* ¶ 38.

to Delaware for two reasons. For one, the police had three units stationed at the Delaware Memorial Bridge awaiting its return and the jeep returned to Delaware via that route, meaning the police likely would have resumed visual surveillance at that point. In addition, the police could have—and it is reasonable to conclude they would have—set up a "geo fence" to alert them when the MTD (and thus the jeep) crossed back into Delaware and then used the MTD to track and thereby relocate the jeep in Delaware.[32]

(25) For these reasons, we find under these circumstances that the police inevitably would have relocated the jeep in Delaware, executed the search warrant, and discovered the heroin. The Superior Court, therefore, did not err in denying Metelus's motion to suppress.

(26) Finally, Metelus argues that the Superior Court erred in denying her motion to suppress all evidence obtained under the jeep search warrant because that warrant was not supported by probable cause. "A search warrant may be issued only upon a showing of probable cause."[33] "Probable cause requires that, 'given all the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[34] "An affidavit in support of a search warrant

---

[32] App. to Appellee's Answering Br. at B159 ("The [MTD] had already been set up with a 'geo fence' alerting officers when the vehicle crossed the Kent and Sussex county border.").
[33] *Fink v. State*, 817 A.2d 781, 786 (Del. 2003).
[34] *Stones v. State*, 676 A.2d 907, 1996 WL 145775, at *2 (Del. Feb. 23, 1996) (Table) (alteration omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

13

must, within the four corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place."[35] "In reaching a decision, a magistrate's finding should be based on the totality of the circumstances,"[36] which may be informed by a reasonable police officer's training and experience.[37] "After-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts."[38]

(27) Metelus's argument is premised on omitting "all facts unrelated to Ms. Metelus and the Jeep she was driving."[39] Metelus provides no reason why the other facts in the affidavit should be disregarded. When all the information within the four corners of the affidavit is considered—as is proper in a totality-of-the-circumstances analysis—it is apparent that the jeep search warrant was supported by probable cause.

(28) The affidavit contained sufficient facts for a judicial officer to conclude that there was a fair probability that contraband would be found in the jeep on the night of November 4, 2016. The twenty-eight-page affidavit described a year-long

---

[35] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006) (en banc).
[36] *McKinney v. State*, 107 A.3d 1045, 1047 (Del. 2014) (en banc).
[37] *Miller v. State*, 4 A.3d 371, 373 (Del. 2010).
[38] *Smith v. State*, 887 A.2d 470, 473 (Del. 2005) (en banc) (alteration omitted) (quoting *Gates*, 462 U.S. at 236).
[39] Appellant's Am. Opening Br. at 27.

investigation into Ways's large-scale distribution of heroin and cocaine. It contained information from five cooperating individuals ("CIs"), two of whom made controlled purchases of heroin from Ways and his girlfriend. In the first two weeks of September 2016, one CI told the police that Ways would be obtaining the jeep because it had a larger hidden compartment than his other trafficking vehicle. In the first two weeks of October, that same CI informed the police that Ways used the jeep as a storage location for drugs and currency. An affiant corroborated this when he observed Ways on multiple occasions—including on November 4—perform actions in the jeep that were, according to his training and experience, consistent with storing drugs and currency inside a hidden compartment.

(29)   The affidavit also provided that on November 4, sometime after Ways was observed entering and exiting the jeep, Metelus drove the jeep to New Jersey— one of the locations from which Ways, according to two CIs, was obtaining his supply of heroin and cocaine. According to the affidavit, "Metelus was followed to a location known for high drug trafficking."[40]   Furthermore, the affidavit explained that Metelus had no criminal history and that, from training and experience, it is "known that large scale drug dealers use third party subjects with little to no criminal history to conduct 'drug runs.'"[41]

---

[40] *Id.* Ex. D ¶ 38.
[41] *Id.* ¶ 37.

(30)   Based on the totality of the circumstances, the facts presented in the affidavit were adequate for a judicial officer to form a reasonable belief that an offense had been committed and that heroin would be found in the jeep.   Therefore, the Superior Court did not abuse its discretion by denying Metelus's motion to suppress.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice